UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BUNN ENTERPRISES, INC, | : | |
| 13589 State Route 550 | : | |
| Fleming, Ohio 45729-5235 | : | Case No.:      2:13-cv-00357 |
| | : | |
| and | : | |
| | : | Judge: |
| KEVIN W. BUNN | : | |
| 2844 Deming Rd. | : | Magistrate Judge: |
| Vincent, Ohio 45784 | : | |
| | : | |
| and | : | **VERIFIED COMPLAINT FOR** |
| | : | **DECLARATORY JUDGMENT,** |
| DELBERT G. NEWLON | : | **PRELIMINARY INJUNCTION,** |
| 10775 State Route 550 | : | **PERMANENT INJUNCTION AND** |
| Vincent, Ohio 45784 | : | **DAMAGES** |
| | : | |
| and | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| DANIEL J. LANTZ | : | **ENDORSED HEREON** |
| 23380 Dixon Rd. | : | |
| Coolville, Ohio 45723 | : | |
| | : | |
| and | : | |
| | : | |
| MARK A. MORGAN | : | |
| 2149 Center Rd. | : | |
| Hinckley, Ohio 44233 | : | |
| | : | |
| and | : | |
| | : | |
| MICHAEL S. SCHAU | : | |
| 151 Cornerstone Dr. | : | |
| Marietta, Ohio 45750 | : | |
| | : | |
| and | : | |
| | : | |
| DAVID E. WELCH | : | |
| 25851 Main St. | : | |
| Coolville, Ohio 45723 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |

v.                                              :
                                                :
OHIO OPERATING ENGINEERS                        :
FRINGE BENEFIT PROGRAMS                         :
c/o Brian Barch                                 :
1140 Dublin Road                                :
P.O. Box 12009                                  :
Columbus, Ohio 43212-0009                       :
                                                :
                    Defendants.                 :
                                                :
                                                :
                                                :

## INTRODUCTION

1.      This is an action for declaratory relief and damages under 28 U.S.C. §1331, 28

U.S.C. §2201, et seq. 29 USC § 185(a) and Section 502 of the Employee Retirement Income

Security Act ("Act"), 29 U.S.C. § 1132.  This action seeks to resolve a present controversy

between Bunn Enterprises, Inc. ("Bunn") and defendant Ohio Operating Engineers Fringe

Benefit Programs (the "Fund").  The dispute between the parties is whether Bunn is contractually

obligated to make contributions to the Fund for all hours worked by each employee, or only

those hours in which employees perform covered work under the collective bargaining

agreement ("CBA").   See, May 1, 2010 through April 30, 2013 Ohio Heavy Highway

Agreement, ¶¶ 2 and 35, February 1, 2012 letter from Bunn to the Fund and March 13, 2012

letter from the Fund to Bunn attached hereto respectively as Exhibits A, B and C.  Additionally,

individual Plaintiffs/plan participants seek to recover benefits due and owed to them under the

plan, clarify their rights to future benefits under the plan, enjoin the Fund's violations of the

terms of the plan and obtain any other appropriate equitable relief.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under Section 301(a) of the Labor Management Relations Act ["LMRA"], 29 U.S.C. 185(a), for violation of a contract between a labor organization and an employer.

3.      The Court also has jurisdiction over this matter by virtue of 28 U.S.C. § 2201 as there is an actual controversy between Bunn and the Fund, which this court is authorized to resolve by declaratory judgment.

4.      The Court also has subject matter jurisdiction under Section 502(a) of ERISA, 29 U.S.C. § 1132(a)(1) and (3) as plan participants are empowered to bring a civil actions to recover benefits due under the terms of the plan, enforce their rights under the plan, clarify their rights to future benefits under the terms of the plan or to enjoin any act or practice which is in violation of the plan or obtain other appropriate equitable relief.

5.      Venue is proper in this Court under 29 U.S.C. § 1391 as the Court has jurisdiction over all of the parties and the events or omissions giving rise to Plaintiffs' claims occurred in the Southern District of Ohio.

6.      Bunn is a citizen of Ohio because that is the state in which it was incorporated and in which it has its principal place of business.

7.      Upon information and belief the Fund is a citizen of Ohio because that is the state in which it was incorporated and in which it has its principal place of business.

8.      Kevin W. Bunn ("K.W. Bunn") is a citizen of Ohio as he is domiciled in Vincent, Ohio.

9.      Delbert G. Newlon ("Newlon") is a citizen of Ohio as he is domiciled in Vincent, Ohio.

2

10.    Daniel J. Lantz ("Lantz") is a citizen of Ohio as he is domiciled in Coolville, Ohio.

11.    Mark A. Morgan ("Morgan") is a citizen of Ohio as he is domiciled in Hinckley, Ohio.

12.    Michael S. Schau ("Schau") is a citizen of Ohio as he is domiciled in Marietta, Ohio.

13.    David E. Welch ("Welch") is a citizen of Ohio as he is domiciled in Coolville, Ohio.

## THE PARTIES

14.    Bunn is a corporation organized and operating under the laws of the State of Ohio and has its principal place of business 13589 State Route 550 in Fleming, Ohio.  Bunn is an "employer" within the meaning of Section 301 of LMRA, 29 U.S.C. § 185 and Section 3(3) of ERISA, 29 U.S.C. § 1002(5).

15.    K.W. Bunn is the owner of Bunn and a "participant" in the Fund within the meaning of Section 3(7) of ERISA, 29. U.S.C. § 1002(7).  K.W. Bunn first paid into the Fund's Health and Welfare Plan in January 1996.  K.W. Bunn is a member of the International Union of Operating Engineers, Local 18 ("Local 18").

16.    Newlon was a part-time employee of Bunn and "participant" in the Fund within the meaning of Section 3(6) and (7) of ERISA, 29 U.S.C. § 1002(6)(7).  Newlon retired from Local 18 in or about March 2008.  Newlon is no longer employed by Bunn and his last day of employment was March 9, 2012.

17.    Lantz is an employee of Bunn and "participant" in the Fund within the meaning of Section 3(6) and (7) of ERISA, 29 U.S.C. § 1002(6)(7).  Lantz's date of hire was April 6, 2009.

Lantz first paid into the Fund's Health and Welfare Plan in April 2009.  Lantz is a member of Local 18.

18.     Morgan is an employee of Bunn and "participant" in the Fund within the meaning of Section 3(6) and (7) of ERISA, 29 U.S.C. § 1002(6)(7).  Morgan's date of hire was July 9, 2009.  Morgan first paid into the Fund's Health and Welfare Plan in July 2009.  Morgan is a member of Local 18.

19.     Schau is an employee of Bunn and "participant" in the Fund within the meaning of Section 3(6) and (7) of ERISA, 29 U.S.C. § 1002(6)(7).  Schau's date of hire was July 5, 2010.  Schau first paid into the Fund's Health and Welfare Plan in October 2011.

20.     Welch is an employee of Bunn and "participant" in the Fund within the meaning of Section 3(6) and (7) of ERISA, 29 U.S.C. § 1002(6)(7).  Welch's date of hire was August 23, 2010.  Welch first paid into the Fund's Health and Welfare Plan in August 2010.  Welch was a member of Local 18 until April 2012.

21.     The Fund is located in Columbus, Ohio and upon information and belief is organized for the benefit of workers throughout the state of Ohio.  Upon information and belief, the Fund is the collective agent for the International Union of Operating Engineers, Local 18.  The Fund administers a pension fund, a health and welfare plan, an apprenticeship fund and an education and safety fund which may be impacted by the matters set forth herein.  The Fund is an "employee benefit plan" within the meaning of Section 3(3) and 502 of ERISA, 29 U.S.C. §§ 1002(3) and 1132.

**RELEVANT FACTS**
**THE AUDIT**

22.     Bunn is a union employer primarily engaged in the business highway construction.

4

23.     Bunn is signatory to the Ohio Heavy Highway Agreement ("CBA") effective May 1, 2010 through April 30, 2013 between Local 18 and the Labor Relations Division of the Ohio Contractors Association.

24.     Local 18 is a labor organization with a geographic jurisdiction covering 85 counties in Ohio and four counties in Northern Kentucky, and is a "labor organization" under Section 301 of LMRA, 29 U.S.C. § 185.

25.     Under the terms of the CBA, "[f]ringe benefit contributions shall be paid…for all hours paid to each employee by the Employer under this Agreement[.]"  See, Ex. A, ¶ 35.

26.     Paragraph 3 under Article II, *Provisions and Limitations*, expressly states that contributions shall be paid for all work performed within the work jurisdiction outlined in Article I of the CBA.

27.     Under the terms of the CBA, the Fund is permitted to audit the books and records of any Employer obligated to make the contributions noted immediately above.  Id., ¶ 36.

28.     On or about October 12, 2011, Bunn received a letter from the Fund requesting to audit payroll records from January 2008 to the present.  See, Exhibit D attached hereto.

29.     On or about November 14, 2011, Bunn received a second letter from the Fund requesting to audit payroll records from January 2008 to the present.  See, Exhibit E attached hereto.

30.     On or about January 3, 2012, the Fund conducted an audit of Bunn's payroll records.

31.     On or about January 19, 2012, the Fund sent the results of its audit to Bunn ("first audit report").  See, Exhibit F attached hereto.

5

32.     Based upon its audit, the Fund determined that Bunn failed to pay certain fringe benefit contributions due to the Fund, as well as Union Administrative Dues which had been withheld from employees' wages but not remitted.

33.     Including late charge fees, the Fund determined that Bunn owed a total of $9,134.41 and if the Fund did not receive payment before February 15, 2012 more late charges would ensue.

34.     On or about February 1, 2012, Bunn sent a letter to the Fund disputing the results set forth in the Fund's first audit report.  See, Exhibit B attached hereto

35.     Bunn instructed the Fund that the 177.5 hours noted in the Fund's first audit report for January 2008 was worked performed by Newlon and was not covered work under the CBA.  As such, no contributions were required.

36.     Bunn also noted that because the employee whose hours were in dispute was retired (Newlon), Bunn erroneously paid the required contribution benefits for any covered work Newlon did perform directly to Newlon, instead of the Fund.

37.     Bunn further disputed the late charge assessment.

38.     Accordingly, Bunn asserted that it owed $4,107.88 in unpaid contributions and various Union Administrative Dues to the Fund, not $9,134.41.

39.     On or about March 9, 2012 the Fund sent Bunn a second set of audit findings ("second audit report").  See, Exhibit G attached hereto.

40.     The Fund was now asserting that Bunn owed $51,297.53 in unpaid fringe benefit contributions, Union Administrative Dues and late fees.

41.     The Fund further asserted that if it did not receive payment of $51,297.53 before March 15, 2012 additional late fees would be forthcoming.

6

42.     On or about March 13, 2012, the Fund sent a letter to Bunn stating that it would not address the arguments set forth in Bunn's February 1, 2012 letter (Newlon did not perform covered work in January 2008) because the Fund's second audit report superseded the first audit report.  See, Exhibit C attached hereto.

43.     The Fund also asserted that under the provisions of the CBA, Bunn is obligated to pay fringe benefit contributions for all hours worked by each employee, not just those hours performing covered work under the CBA.

44.     On or about March 29, 2012, Bunn responded to the Fund's March 13, 2012 correspondence.  See, Exhibit H attached hereto.  Bunn reiterated that that the majority of the work performed by Newlon was not covered work as is expressly defined in the CBA.

45.     Bunn also noted that the CBA only requires fringe benefit contributions for all hours paid to each employee by the employer under the CBA, i.e. covered work.

**<u>DELBERT NEWLON</u>**

46.     On or about October 12, 2011, Newlon received correspondence from the Fund notifying him that they had become aware that he may be working full time as an operating engineer while receiving pension benefits from the Fund.  See, Exhibit I attached hereto.

47.     The Fund further requested certain documents from Newlon in order to verify that he was not working in excess of forty (40) hours per month.

48.     Newlon was an employee of Bunn for over thirty (30) years.

49.     Newlon retired from Local 18 in or about March 2008.

50.     Subsequent to his retirement from Local 18, Newlon remained employed with Bunn performing work not covered under the CBA such as farm work, errands and/or deliveries.

7

51.     Notwithstanding, Newlon did perform limited covered work subsequent to his March 2008 retirement.

52.     In August 2008, Newlon accumulated a total of fifty-two (52) hours of covered work while working on the U.S. Route 422 project in Geauga County and the Interstate 75 Duncannon Road Interchange.  See, August 2008 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit J.

53.     In September 2008, Newlon accumulated a total of thirty-one (31) hours of covered work while working on the Interstate Route 71/State Route224/Interstate Route 76 project in Medina County and the Fairmont Connector Interchange projects in Marion County.  See, September 2008 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit K.

54.     In October 2008, Newlon accumulated a total of sixty-seven (67) hours of covered work while working on three separate projects.  Newlon performed covered work on the State Route 39 project in Tuscarawas County, the Interstate Route 71/State Route224/Interstate Route 76 project in Medina County and a project in Putnam County.  See, October 2008 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit L.

55.     Newlon did not perform any other covered work in 2008.

56.     In total, Newlon performed 150 hours of covered work in 2008.

57.     Notwithstanding, the Fund asserts that Bunn owes fringe benefit contributions totaling $6,225.00 and local 18 administrative dues totaling $279.62 for 408.5 hours of work performed by Newlon in 2008.  See, second audit report.

58.     The Fund asserts Newlon performed 177.5 hours of work in January 2008.

59.     The Fund asserts Newlon performed thirty-seven (37) hours of work in June 2008.

60.     The Fund asserts Newlon performed 146.5 hours of work in August 2008.

61.     The Fund asserts Newlon performed 137.5 hours of work in September 2008.

62.     The Fund asserts Newlon performed eighty-seven and one half (87.5) hours of work in October 2008.

63.     In April 2009, Newlon accumulated a total of 112.5 hours of covered work while working on the Interstate Route 77 project in Summit County.  See, April 2009 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit M.

64.     In June 2009, Newlon accumulated a total of twenty-three (23) hours of covered work while working on the State Route 39 project in Tuscarawas County.  See, June 2009 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit N.

65.     In July 2009, Newlon accumulated a total of forty-eight (48) hours of covered work while working on the Interstate Route 690 project in Lake County and The Ohio State University Airport Rehab S. Runway Ramp project.  See, July 2009 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit O.

66.     Newlon did not perform any other covered work 2009.

67.     In total, Newlon performed 183.5 hours of covered work in 2009.

68.     Notwithstanding, the Fund asserts that Bunn owes fringe benefit contributions totaling $6,478.45 and local 18 administrative dues totaling $306.41 for 580 hours of work performed by Newlon in 2009.  See, second audit report.

69.     The Fund asserts Newlon performed 193 hours of work in April 2009.

70.     The Fund asserts Newlon performed 105.5 hours of work in June 2009.

71.    The Fund asserts Newlon performed eighty-seven and one half (87.5) hours of work in July 2009.

72.    The Fund asserts Newlon performed ninety-four (94) hours of work in September 2009.

73.    Newlon did not perform any covered work in 2010.

74.    Notwithstanding, the Fund asserts that Bunn owes fringe benefit contributions totaling $10,640.25 and local 18 administrative dues totaling $357.00 for 894 hours of work performed by Newlon in 2010.  See, second audit report.

75.    The Fund asserts Newlon performed forty (40) hours of work in January 2010.

76.    The Fund asserts Newlon performed 160 hours of work in February 2010.

77.    The Fund asserts Newlon performed 160 hours of work in March 2010.

78.    The Fund asserts Newlon performed 172.5 hours of work in April 2010.

79.    The Fund asserts Newlon performed 360 hours of work in May 2010.

80.    In May 2011 Newlon accumulated a total of fifteen (15) hours of covered work while working on the Interstate Route 76 project in Medina County.  See, May 2011 U.S. Department of Labor Certified Payroll Report attached hereto as Exhibit P.

81.    Newlon did not perform any other covered work in 2011.

82.    In total, Newlon performed fifteen (15) hours of covered work in 2011.

83.    Notwithstanding, the Fund asserts that Bunn owes fringe benefit contributions totaling $14,359.25 and local 18 administrative dues totaling $467.92 for 1,148.5 hours of work performed by Newlon in 2011.  See, second audit report.

84.    The Fund asserts Newlon performed 170 hours of work in January 2011.

85.    The Fund asserts Newlon performed 152 hours of work in February 2011.

10

86.     The Fund asserts Newlon performed 149 hours of work in March 2011.

87.     The Fund asserts Newlon performed 150 hours of work in April 2011.

88.     The Fund asserts Newlon performed 135 hours of work in May 2011.

89.     The Fund asserts Newlon performed 166.5 hours of work in June 2011.

90.     The Fund asserts Newlon performed 186 hours of work in July 2011.

91.     The Fund asserts Newlon performed forty (40) hours of work in August 2011.

92.     On or about April 12, 2012 Newlon received correspondence from the Fund enclosing a check in the amount of $5,617.50 for his monthly premium from October 2008 through July 31, 2009.  The Fund further asserted that due to the audit findings Newlon was no longer eligible for his pension effective July 31, 2009.  See, Exhibit Q attached hereto.  Upon information and belief, Newlon has not received any payments from the Fund since that time. As of December 21, 2012 approximately $14,000 has been withheld from Newlon.

**BUNN'S CONTINUED CONTRIBUTIONS TO THE FUND FOR COVERED WORK**

93.     Despite the disputed findings of the second audit report, Bunn has continued to remit its required contributions to the Fund for the employees who perform covered work under the CBA.

94.     On or about February 13, 2012, Bunn remitted contributions to the Fund in the amount of $2,197.88 for the employees who performed covered work under the CBA in January 2012.  See, Exhibit R attached hereto.

95.     On or about March 12, 2012, Bunn remitted contributions to the Fund in the amount of $2,428.92 for the employees who performed covered work under the CBA in February 2012.  See, Exhibit S attached hereto.

11

96.    On April 6, 2012, the Fund sent correspondence to Bunn acknowledging receipt of check # 11302 in the amount of $119.48 and check # 11304 in the amount of $2309.44, as well as Bunn's February 2012 report.  See, Exhibit T attached hereto.

97.    Rather than credit the payments for which they were intended, the Fund credited the payments towards the amount set forth in the second audit report notwithstanding Bunn's assertions that the second audit report was erroneous.

98.    On or about April 12, 2012, Bunn sent correspondence to the Fund instructing them that the checks immediately referenced above were the contributions for hours of covered work performed in February 2012 by K.W. Bunn and Chad L. Karcher ("Karcher") and should be credited as such.  Bunn also directed the Fund not to credit any future contributions towards the disputed second audit report. See Exhibit U attached hereto.

99.    In crediting the payments towards the "delinquency" noted in the disputed second audit report, K.W. Bunn and Karcher did not receive credit for hours worked with respect to the Fund's Health and Welfare pension and have since lost their health insurance because the Fund continues to credit the payments towards the amount set forth in the second audit report rather than credit the payments towards the employees for which they were intended.

100.    Upon information and belief employee/participants Lantz, Morgan, Schau and Welch lost their health insurance benefits for the same reasons.

101.    Upon information and belief employee/participants Lantz, Morgan, Schau and Welch received no official notice from the Fund that their health insurance benefits were about to be terminated.

102.    Upon information and belief, K.W. Bunn, Karcher, Lantz, Morgan, Schau and Welch have accumulated the necessary hours to remain eligible to receive health insurance

12

benefits but for the Fund's withholding of all hours and crediting any and all contribution payments received by Bunn towards the amount listed in the second audit report.

103.    On or about April 13, 2012, Bunn remitted contributions to the Fund in the amount of $3598.55 for the employees who performed covered work under the CBA in March 2012.  See, Exhibit V attached hereto.

104.    On or about May 15, 2012, Bunn remitted contributions to the Fund in the amount of $6502.00 for the employees who performed covered work under the CBA in April 2012.  See, Exhibit W attached hereto.

105.    On or about June 19, 2012, Bunn remitted contributions to the Fund in the amount of $8931.41 for the employees who performed covered work under the CBA in May 2012.  See, Exhibit X attached hereto.

106.    On or about July 15, 2012, Bunn remitted contributions to the Fund in the amount of $5404.99 for the employees who performed covered work under the CBA in June 2012.  See, Exhibit Y attached hereto.

107.    On or about August 15, 2012, Bunn remitted contributions to the Fund in the amount of $12,696.48 for the employees who performed covered work under the CBA in July 2012.  See, Exhibit Z attached hereto.

108.    On or about September 12, 2012, Bunn received a call from then current employee and member of Local 18, Karcher.

109.    Karcher informed Bunn that the Fund's office in Columbus told him he needed to pay $299.00 for insurance coverage because his union hours were not being credited to him.

110.    Upon information and belief, the last report the Fund's office had for Karcher's hours at that time, was December 2011.

111.     Upon information and belief, the Fund informed Karcher that all 2012 hours are being withheld due to the Newlon case.

112.     Company records indicate Karcher had accumulated 673 hours to his credit from January 2012 through July 2012.

113.     Karcher is no longer an employee of Bunn.

114.     Upon information and belief, Karcher has since been credited for all his hours because he terminated his employment with Bunn.

115.     Upon information and belief, the Fund reimbursed Karcher for monies he spent out of pocket to maintain his health insurance benefits.

116.     On or about September 17, 2012, Bunn remitted contributions to the Fund in the amount of $6,699.17 for the employees who performed covered work under the CBA in August 2012.  See, Exhibit AA attached hereto.

117.     On or about October 17, 2012, Bunn remitted contributions to the Fund in the amount of $6,341.71 for the employees who perform covered work under the CBA in September 2012.  See, Exhibit BB attached hereto.

118.     On or about November 13, 2012, Bunn remitted contributions to the Fund in the amount of $4,283.02 for the employees who perform covered work under the CBA in October 2012.  See, Exhibit CC attached hereto.

119.     On or about December 17, 2012, Bunn remitted contributions to the Fund in the amount of $886.35 for the employees who perform covered work under the CBA in November 2012.  See, Exhibit DD attached hereto.

120.   On or about January 5, 2013, Bunn remitted contributions to the Fund in the amount of $224.10 for the employees who perform covered work under the CBA in December 2012.  See, Exhibit EE attached hereto.

121.   On or about January 15, 2013, the Fund sent correspondence to Bunn's Counsel (at that time) acknowledging receipt of check # 12608 in the amount of $834.12, check # 12609 in the amount of $52.23, check # 12667 in the amount of $12.26, check # 12669 in the amount of $211.84, as well as Bunn's November and December 2012 reports.  See, Exhibit FF attached hereto.

122.   Rather than credit the payments for which they were intended, the Fund again credited the payments towards the amount set forth in the second audit report notwithstanding Bunn's April request to refrain from doing so.

123.   On or about February 12, 2013, Bunn remitted contributions to the Fund in the amount of $2960.36 for the employees who perform covered work under the CBA in January 2013.  See, Exhibit GG attached hereto.

124.   On or about March 13, 2013, Bunn remitted contributions to the Fund in the amount of $2265.60 for the employees who perform covered work under the CBA in February 2013.  See, Exhibit HH attached hereto.

125.   On or about March 20, 2013, the Fund sent correspondence to Bunn's Counsel acknowledging receipt of check # 12574 in the amount of $193.20, check # 12756 in the amount of $2767.16, check # 12818 in the amount of $2118.40, check # 12819 in the amount of $147.20, as well as Bunn's January and February 2013 reports.  See, Exhibit II attached hereto.

126.    Rather than credit the payments for which they were intended, the Fund again credited the payments towards the amount set forth in the second audit report notwithstanding Bunn's April request to refrain from doing so.

## COUNT ONE
## CLAIM FOR DECLARATORY JUDGMENT

127.    Plaintiffs incorporate as if fully rewritten herein the allegations contained in the preceding paragraphs in this Complaint.

128.    A real and justiciable controversy now exists between Defendants and Plaintiffs requiring that this court declare their rights and liabilities under the CBA.

129.    Plaintiffs have exhausted all applicable administrative remedies under collective bargaining agreement and related trust agreements.  In the alternative, attempting to exhaust applicable administrative remedies under the CBA and related trust agreements would be futile for a number of reasons, including but not limited to the fact the Plaintiffs have already had their hours withheld and subsequently been denied health insurance benefits, Newlon's pension benefits are already being withheld and the Fund continues to demand contributions for all hours worked as opposed to only those hours performing covered work.

130.    Plaintiffs are entitled to a declaration that the CBA does not require contributions for all hours worked by employees, but only those hours performing the covered work specified in the CBA.

131.    Individual plaintiffs are entitled to a declaration that their health benefits be reinstated as they have met the requisite hours at all relevant times to remain eligible to receive such benefits.

132.    Plaintiff Newlon is entitled to a declaration that his pension be reinstated because he has not performed a sufficient amount of covered work to suspend his benefits indefinitely.

16

133. In the alternative, Plaintiffs are entitled to a declaration that to the extent and/or in the event that the CBA is ultimately interpreted as requiring payment to the Funds for all hours worked by each employee, Defendant is prohibited from withholding the hours of K.W. Bunn, Lantz, Morgan, Schau and Welch as the only hours in dispute pertain to Newlon and Plaintiff Bunn has continued to remit the requisite contributions for K.W. Bunn, Lantz, Morgan, Schau and Welch.

<u>**COUNT TWO**</u>
<u>**CLAIM FOR PRELIMINARY AND PERMANENT INJUNCTION**</u>

134. Plaintiffs incorporate as if fully rewritten herein the allegations contained in the preceding paragraphs in this Complaint.

135. Plaintiffs are without remedy with respect to the Fund's unlawful interpretation of the CBA requiring contributions for all hours worked by each employee, rather than only those hours worked performing covered work under the CBA.

136. Due to this unlawful interpretation of the CBA, the Fund is unlawfully withholding health insurance benefits and pension benefits to employee participants who are otherwise eligible to receive such benefits.

137. Plaintiffs are entitled to a finding that the Fund is equitably estopped from seeking contributions for work that is not covered under the CBA.

138. Granting declaratory and injunctive relief as requested by the Plaintiffs will not harm the Fund as Plaintiff Bunn has continued to remit contributions for all of its employees performing covered work under the CBA. Any perceived harm to the Fund is outweighed by the harm being caused to the individual Plaintiffs who are currently without health insurance benefits and pension benefits.

139.    Plaintiffs will be irreparably harmed if the Fund is not enjoined from seeking contributions for work that is not covered under the CBA and subsequently withholding employee/plan participant health insurance benefits and pension benefits.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs demand that this Court enter judgment in favor of Plaintiffs and against the Fund as follows:

A.    Declaring that the CBA is properly interpreted as not requiring contribution for all hours worked by employees, but only those hours performing the covered work specified in the CBA.

B.    Declaring that individual Plaintiffs health benefits be reinstated as they meet the requisite hours to remain eligible to receive such benefits.

C.    Declaring Plaintiff Newlon is entitled to have his monthly pension payments reinstated because he has not performed a sufficient amount of covered work to suspend his pension payments indefinitely.

D.    Enjoin the Fund from demanding contribution payments for work not covered under the CBA.

E.    Enjoin the Fund from withholding pension benefits to Plaintiff Newlon.

F.    Enjoin the Fund from withholding health insurance benefits to Plaintiffs K.W. Bunn, Lantz, Morgan, Schau and Welch.

G.    Order Defendant to reimburse Plaintiffs K.W. Bunn, Lantz, Morgan, Schau and Welch any money each was required to pay out of pocket to maintain health the insurance benefits they were otherwise eligible to receive.

H.      Order Defendant to reimburse Plaintiff Newlon the pension payments which he was otherwise eligible to receive.

Grant such other and further relief, whether legal or equitable, as this Court may find appropriate, including awarding Plaintiffs costs and reasonable attorney fees.

## JURY DEMAND

Plaintiffs request a trial by jury on all claims so triable.

Dated this 16th day of April, 2013.

Respectfully submitted,

/s/ Ronald L. Mason
Ronald L. Mason (0030110)
(Trial Attorney)
Aaron T. Tulencik (0073049)
Mason Law Firm Co., L.P.A.
425 Metro Place North, Suite 620
Dublin, Ohio 43017
t: 614.734.9450
f: 614.734.9451
rmason@maslawfirm.com
atulencik@maslawfirm.com

*Counsel for Plaintiffs*

## **VERIFICATION**

Kevin W. Bunn, being first duly cautioned and sworn, states that he is the President of Bunn Enterprises, Inc., and is authorized to verify this Complaint on behalf of Bunn Enterprises, Inc., has read the foregoing Complaint, and that the allegations contained therein are true to the best of his information, knowledge, and belief.

_____
Kevin W. Bunn

STATE OF OHIO         :
                             :     SS:
COUNTY OF WASHINGTON    :

Sworn to and subscribed before me on this 16th _____ day of April, 2013.

_____
NOTARY PUBLIC

GENA R. EICHMILLER
Notary Public, State of Ohio
My Commission Expires 11-05-2013

20

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2013, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such filing to all counsel registered to receive electronic notices, and I hereby certify that I have sent, via First Class U.S. Mail and e-mail to the following:

Mr. Bryan C. Barch, Esq.
Ohio Operating Engineers Fringe Benefit Programs
1180 Dublin Road
P.O. Box 120009
Columbus, Ohio 43212-0009
BryanBarch@ooefbp.com

*In-House Counsel for Defendants*

/s/ Aaron Tulencik
Aaron Tulencik (0073049)