UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BUNN ENTERPRISES, INC., *et al.*,    :
                                                                    :
      Plaintiffs,              :      Case No.:     2:13-cv-00357
                                   :
v.                                 :
                                   :      JUDGE: ALGENON L. MARBLEY
OHIO OPERATING ENGINEERS    :
FRINGE BENEFIT PROGRAMS     :      Magistrate Judge: Terence P. Kemp
                                   :
      Defendant.              :      **PLAINTIFFS' OPENING BRIEF**
                                   :      **FOR HEARING ON PRELIMINARY**
                                   :      **INJUNCTION**

**I.    INTRODUCTION**

Pursuant to Judge Marbley's Temporary Restraining dated April 25, 2013 Plaintiffs, Bunn Enterprises, Inc. ("Bunn"), Kevin W. Bunn ("K.W. Bunn"), Delbert G. Newlon ("Newlon"), Daniel J. Lantz ("Lantz"), Mark A. Morgan ("Morgan"), Michael S. Schau ("Schau") and David E. Welch ("Welch") hereby submit their Opening Brief for the May 2, 2013 Preliminary Injunction Hearing. Plaintiffs seek the following: (1) Enjoin Defendants from seeking contributions (past and future) for all hours worked by each employee; (2) Order Defendant to seek contributions (past and future) for only those hours in which employees perform covered work under the CBA; (3) Enjoin Defendants from crediting contributions (past and future) towards the alleged delinquent amount in dispute (4) Order Defendant to credit the contributions (past and future) towards the employees for whom the contributions were made; (5) Enjoin Defendant from withholding health insurance benefits to Lantz, Morgan, Schau and Welch; and (6) Order Defendant to reimburse Plaintiffs Lantz, Morgan, Schau and Welch the amount of money each was required to pay out of pocket to maintain the health insurance benefits Defendant unlawfully withheld.

**II.     BACKGROUND**

Bunn is signatory to the Ohio Heavy Highway Agreement ("CBA") effective May 1, 2010 through April 30, 2013 between Local 18 and the Labor Relations Division of the Ohio Contractors Association.[1] Pursuant to the terms of the CBA, "[f]ringe benefit contributions shall be paid…for all hours paid to each employee by the Employer under this Agreement" to the Ohio Operating Engineers Fringe Benefit Program (the "Fund").[2] The Fund is permitted to audit the books and records of any Employer obligated to make these contributions.

The Fund conducted an audit in late 2011 and subsequently informed Bunn it owed over $50,000 in unpaid contributions. Bunn disputes the amount owed because the Fund is seeking contributions for which it is not entitled, i.e., work not covered under the CBA. Nevertheless, Bunn continues to remit its required contributions to the Fund for the employees who perform covered work under the CBA. Even so, rather than credit the payments for which they were intended, the Fund continues to credit the payments towards the amount set forth in the disputed audit. In doing so, the Fund has discontinued the health insurance benefits of Plaintiffs Lantz, Schau, Morgan and Welch even though they are otherwise eligible.

**III.    LAW AND ARGUMENT**

A preliminary injunction is a remedy courts implement to preserve the status between the parties until a trial on the merits can be carried out. See, *White of Dublin v. After the Ring,* 2013 U.S. Dist. LEXIS 49617, *3 (S.D. Ohio 2013). When determining whether to grant a preliminary injunction, the court must balance the following factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer

---

[1] Bunn is also signatory to the Associated General Contractors ("AGC") of Ohio Building Agreement between the International Union of Operating Engineers Local 18 and its Branches, (AFL-CIO) and the Labor Relations of the AGC of Ohio.

[2] See, Exhibit A attached to Verified Complaint.

irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuing the injunction." Id. at *3-4. These factors are to be balanced against one another and are not prerequisites which must be met. Id. at *4.

The decision whether or not to issue a preliminary injunction falls within the sensible discretion of the court. See, *Wilkins v. Daniels,* 2012 U.S. Dist. LEXIS 180321, *36 (S.D. Ohio 2012). For instance, if only three of the four factors weigh in favor of granting the preliminary injunction, the court can grant the preliminary injunction. See, *MEMC Electronic v. Balaksrishnan*, 2012 U.S. Dist. LEXIS 12887, *14, fn. 1. Admittedly, a preliminary injunction is an extraordinary remedy and is to be granted only if the movant carries their burden of proving the circumstances clearly demand it. Id. at *14. Notwithstanding, "[d]ue to the limited purpose of a preliminary injunction and given that the hearing is often in haste, '[a] party . . . is not required to prove his case in full at a preliminary injunction hearing.'" Id. at *14, fn. 1, citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. ED. 2d 175 (1981).

**A.    There Is A Substantial Likelihood of Success That Plaintiffs Will Prevail On The Merits of Their Claim**

The Fund, as noted in its March 13, 2012 letter[3] to Bunn, has taken the position that Bunn is obligated to pay fringe benefit contributions for *all* hours worked by each employee, not just those hours performing covered work under the CBA. Conversely, Plaintiffs assert that the CBA requires fringe benefit contributions for only the hours worked performing the type of work that is covered under the CBA. Paragraph 35 of the CBA states as follows: "Fringe benefit contributions shall be paid at the following rates for all hours paid to each employee by the

---

[3] See, Exhibit C attached to Plaintiffs' Verified Complaint.

3

Employer **under this Agreement**[.]" (Emphasis added)[4]. Necessarily, an Employer will only pay employees "under this Agreement" when the employees perform the type of work expressly outlined in Article I of the CBA.[5]

Additionally, paragraph 3 set forth in Article II, *Provisions and Limitations*, of the CBA also limits contributions to covered work. Paragraph 3 states:

> 3. All members of the Labor Relations Division of the Ohio Contractors Association, and any person, firm or corporation who as an Employer becomes signatory to this Agreement, shall be bound by all terms and conditions of this Agreement as well as any future amendments which may be negotiated by the Labor Relations Division of the Ohio Contractors Association and the Union, and furthermore, shall be bound to make Health and Welfare payments, Pension payments, Apprenticeship Fund and Safety and Educational Fund payments required under Article V for all work performed within the work jurisdiction outlined in Article I of this Agreement, or any other payment established by the appropriate Agreement.

Accordingly, Employers are not required to pay fringe benefit contributions for hours worked by employees performing any type of work which is not covered under the agreement. The U.S. Court of Appeals for the Sixth Circuit agrees.

In *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.,* 30 F.3d 692, 695-696 (6th Cir. 1994) the Court concluded that when an Employer fails to maintain adequate records that would allow the plan to determine the benefits due or which may become due to such employees as is required by 29 U.S.C. § 1059, the burden shifts to the Employer to prove what work was covered under the agreement and what work was not covered. Thus, under *Grimaldi*, an Employer is potentially liable for contributions on all hours worked during a period in which it is demonstrated some covered work is performed if, as a result of poor record keeping it is impossible to determine the amount due. Id at 697. Nevertheless, *Grimaldi* does not stand

---

[4] See, Exhibit A attached to Plaintiffs' Verified Complaint.

[5] Article I was previously quoted in Plaintiff's April 16, 2013 Motion for Temporary Restraining Order. See also, Exhibit A attached to Plaintiffs' Verified Complaint.

4

for the proposition that if an Employer fails to keep adequate records as reflected by 29 U.S.C. § 1059, the Employer is automatically liable for contributions on all hours worked.  See, *Trustees for Michigan BAC Health Care Fund v. Spencer*, 2008 U.S. Dist. LEXIS 117014, *8 (E.D. Mich. 2008).  Consequently, "[e]vidence that falls short of the clarity and specificity required by § 1059, but nonetheless allows the number of covered hours to be discerned, satisfies the burden." Id.

Bunn's records were more than adequate to determine the amount owed to Newlon for the covered work he performed as noted in the certified payroll reports and monthly contribution reports remitted to the union.  At the very least, *Grimaldi* provides an Employer the opportunity to prove the amount of covered work performed by a given employee versus the amount of work performed that is not covered.  Thus, the Fund's proclamation in its March 19, 2012 correspondence to Bunn that Bunn is required to pay contributions for all hours worked by each employee is not accurate and should not be the basis to withhold insurance benefits and monthly pension benefits.

The District Courts have both recognized and followed the burden shifting approach set forth in *Grimaldi*.  In *Plumbers Local 98 Defined Benefit Pension Fund v. M & P Master Plumbers of Michigan, Inc.*, 608 F.Supp.2d 873, 881 (E.D. Mich. 2009), Judge Rosen, citing *Grimaldi* as "Sixth Circuit precedent," recognized an Employer's right to dispute the Fund's allegations of delinquent contributions by producing evidence that the work was not covered under the CBA.  Likewise, in *Trustees for Michigan BAC Health Care Fund v. Spencer*, *supra,* the Court determined that evidence proffered by the Employer (daily planner, Employer affidavit and Employer self-audit) was sufficient to satisfy its burden under *Grimaldi* and create a question of fact regarding the amount of covered work for which contributions are owed.

In *Trustees of the Northwestern Ohio Plumbers and Pipefitters Pension Plan v. Helm and Associates,* 2012 U.S. Dist. LEXIS 93446 (N.D. Ohio 2012), the pension plan sought to rely upon *Grimaldi* and hold the Employer liable for the entire amount calculated in its audit because the Employer had failed to maintain adequate records as required by 29 U.S.C. §1059. The Court ultimately determined that even though the Employer's daily reports were "sometimes incomplete, vague, blank or otherwise inadequate to calculate liability with mathematical exactness, they do provide enough information from which a reasonably certain calculation can be made, and they do provide detailed information about the vast majority of Defendant's total work hours during the audit period." Id. at 16.  The Court further noted that even though the Employer's records allowed for a reasonably accurate calculation, the pension fund's audit was excessive and not fully credible. Id. Ultimately, the court conducted its own audit using the documents submitted at trial and ordered the Employer to pay $52,735.63 in delinquent contributions, interest and liquidated damages to the pension plan, an amount significantly lower than the $399,305.13 figure noted in the pension plan's audit. The court reasoned as follows:

> Case law suggests a mathematically precise number is not necessary so long as there is reasonable data from which the amount of damages can be ascertained with reasonable certainty. And unlike in *Grimaldi*, in this case it is not utterly impossible to determine with reasonable certainty the extent of Defendant's liability using the records Defendant kept.
>
> ********************************************************************
>
> In sum, because Plaintiff's Audit Report is mostly unreliable, the Court believes holding Defendant liable for the entire amount calculated by the Audit Report would be unjust and contrary to the backbone premise of *Grimaldi* -- that ERISA plans be enabled to collect what they are actually owed at the cost of sometimes collecting more when Defendant's failure to meet a statutory obligation deprives them of the ability to calculate their actual damages. Moreover, despite the flaws and incompleteness of the daily reports, Plaintiffs have not shown the kind of manifest failure to maintain adequate records that the court found in *Grimaldi*. But unlike cases where the amount of covered work could not be determined without reliance upon an audit, here the amount of covered work performed by

> covered employees can be determined with reasonable certainty using the evidence admitted at trial. The Court has therefore undertaken its own calculation and determined an amount owed based on the daily reports, the testimony presented at trial, and the hourly contribution rates used in the Audit Report.

Id. at 18-20. (Internal quotations and citations omitted).[6] Bunn has provided more than enough evidence such that there is reasonable data from which the amount of covered work performed by Newlon can be ascertained with reasonable certainty. Newlon performed limited covered work as expressly illustrated by the certified payroll reports and monthly contribution reports remitted to the union. Nonetheless, the Fund's audit is unreasonable and unreliable.

    B.    **Plaintiffs Will Be Irreparably Harmed Absent a Temporary Restraining Order**

Defendant is seeking contributions for all hours worked by Newlon. Accordingly, Defendant asserts that Bunn owes delinquent contributions with respect to those hours. Bunn has continued to remit monthly contributions for all of its employees who perform covered work. Nonetheless, rather than credit the individuals for whom the contributions were made, the Fund is applying these contribution payments towards the findings of the disputed audit. In doing so, individual Plaintiffs have been denied medical benefits for which they are otherwise eligible to receive. Similarly, Newlon is being denied monthly pension premiums even though Bunn has submitted records enabling the Fund to determine the proper amount of covered work he has performed and, therefore, determine his eligibility to receive monthly pension payments.

Irreparable injury is an injury for which a monetary award is not adequate. See, *Overstreet v. Lexington-Fayette Urban County Gov't.,* 305 F.3d 566, 578 (6th Cir. 2002). The

---

[6] There are two opinions originating from this Court finding that an Employer must contribute for all hours worked by an employee if he splits time between work covered under the CBA and work not covered under the CBA. See, *Noe v. R.D. Jones Excavating, Inc.,* 787 F. Supp. 759 (S.D. Ohio 1992) and *Orrand, et al. v. Shope,* 2002 U.S. Dist. LEXIS 28766 (S.D. Ohio 2002). Notably, *Noe* was decided two (2) years prior to *Grimaldi* and relied upon case law originating in the 9th Circuit. *Orrand*, in turn, relied upon *Noe* (failing to follow *Grimaldi*) and denied the Employer the opportunity to put on evidence that the employee in question did not perform covered work. As noted above, *Grimaldi* is Sixth Circuit precedent and, as such, *Noe* and *Orrand* hold no precedential value in this case.

harm must be actual and imminent.  See, *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006).  Courts have regularly held the loss of medical benefits establishes "irreparable harm."  For example, in *Whelan v. Colgan*, 602 F.2d 1060, 1062 (2nd Cir. 1979) the court concluded that "the threatened termination of benefits such as medical coverage for workers and their families obviously raises the specter of irreparable injury."  In *Whelan*, the Employer trustees blocked the payment of medical and welfare benefits by the Fund to striking employees.  Id at 1061.  The union designated trustees sought injunctive relief and the court subsequently granted the requested injunction.  Id.

In *United Steelworkers of America v. Textron, Inc.*, 826 F. Supp.2d 6, 8 (1st Cir. 1987) the court upheld the District Court's issuance of a preliminary injunction and concluded the loss of insurance benefits constitutes substantial and irreparable harm.  See also, *Mamula v. Satralloy, Inc.,* 578 F. Supp. 563, (S.D. Ohio 1983) (In granting employees' motions for preliminary injunction Court noted that persons on limited incomes who are not covered by health insurance often forego needed medical attention and being denied health insurance which was promised under the CBA results in harm that is not readily measurable, but clearly present); *Schalk v. Teledyne, Inc.,* 751 F.Supp. 1261 (W.D. Michigan 1990), aff'd 948 F.2d 1290 (6th Cir. 1991) (court granted preliminary injunction requiring company to pay insurance premiums because the uncertainty and lack of knowledge of how much money will be needed to cover medical expenses constitutes irreparable harm); and *Golden v. Kelsey Hayes Co.*, 845 F.Supp. 410 (E.D. Mich. 1994), aff'd 73 F.3d 648 (6th Cir. 1996) (court granted preliminary injunction requiring defendant to continue previous insurance plan where retirees presented the court with affidavits detailing the hardship they would experience in the absence of a preliminary injunction).  Bunn

8

continues to remit the required monthly contributions, but the Fund continues to block the men's health and welfare benefits.

### C. The Balance of Harm Strongly Favors the Plaintiffs

The Fund is denying health insurance benefits to Plaintiffs even though Bunn continues to remit the requisite contributions. Rather than credit the individuals for whom the contributions were made, the Fund is applying these contribution payments towards the findings of the disputed audit. There is only one employee (Newlon) whose hours are in dispute and he is suffering the consequences by not receiving much needed monthly pension premiums despite the fact he has regained eligibility under the terms of the plan. Additionally, once Chad L. Karcher terminated his employment with Bunn he regained his health insurance benefits and was subsequently reimbursed for any out of pocket/personal expenses to pay for health insurance. Clearly, the Fund is attempting to exert external pressures upon Bunn to pay the disputed amount by unlawfully withholding insurance benefits to Bunn employees – a claim substantiated in the Fund's Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order.

The Fund maintains that the enforcement of its policy of applying employer payments to the oldest outstanding fringe benefit contributions is "necessary to ensure payment of Bunn's delinquent fringe benefit contributions." See, Fund's Memorandum in Opposition, p. 6. More importantly, the Fund admitted that Plaintiff Morgan's loss of benefits is a result of the enforcement of this policy. Id. Accordingly, the Fund continues to irreparably harm Bunn's current employees due to a dispute over contributions which the Fund is not entitled to receive. Lastly, the Fund should be crediting the monthly payments towards the employees for which the contributions are intended. See, *Operating Engineers Local 324 Health Care Plan v. Dalessandro Contracting Group, LLC*, 2012 U.S. Dist. LEXIS 32551, *20 (E.D. Mich. 2012)

(The court concluded that the Fund's "audit must calculate Defendant's owed contributions on a monthly basis and the audit must account for [Employer's] timely payments made on behalf of an employee in that given month").  The Fund will suffer no harm in reinstating the health insurance benefits as it continues to receive monthly contributions for these employees.

    D.    **The Public Interest Favors Granting a Temporary Restraining Order**

Plaintiffs have a contractual right to health insurance per the terms of CBA.  The Plaintiffs have abided by those terms by working the requisite hours and remitting the necessary monthly contributions in order to obtain and retain eligibility.  Granting Plaintiffs the requested injunction will deter this Fund and others from unlawfully withholding health insurance benefits from persons who are otherwise eligible to receive them.

**IV.    CONCLUSION**

For the reasons outlined above, Plaintiffs respectfully request that this Court grant the preliminary injunction in its entirety.

Dated this 26th day of April, 2013.

        Respectfully submitted,

        /s/ Ronald L. Mason
        Ronald L. Mason (0030110) (Trial Attorney)
        Aaron T. Tulencik (0073049)
        Mason Law Firm Co., L.P.A.
        425 Metro Place North, Suite 620
        Dublin, Ohio 43017
        t: 614.734.9450
        f:  614.734.9451
        rmason@maslawfirm.com
        atulencik@maslawfirm.com

        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on April 26, 2013, I electronically filed the foregoing with the clerk of Court using the CM/ECF system which will send notification of such filing to all counsel registered to receive electronic notices.

                                                  /s/ Aaron Tulencik
                                                  Aaron Tulencik (0073049)