UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


BUNN ENTERPRISES, INC.,            .
et al.,                            .
                                   .
  PLAINTIFFS.                      .       CASE NO. 2:13-CV-357
                                   .
        vs.                        .       COLUMBUS, OHIO
                                   .       APRIL 24, 2013
OHIO OPERATING ENGINEERS           .       1:30 P.M.
FRINGE BENEFIT PROGRAMS,           .
                                   .
  DEFENDANT.                       .
. . . . . . . . . . . . . . .      .


***TRANSCRIPT OF TEMPORARY RESTRAINING ORDER PROCEEDINGS***
BEFORE THE HONORABLE ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE


  APPEARANCES:

  FOR THE PLAINTIFFS:           RONALD L. MASON, ESQ.
                                AARON TULENCIK, ESQ.


  FOR THE DEFENDANT:            BRYAN C. BARCH, ESQ.


- - -


SHAWNA J. EVANS, OFFICIAL FEDERAL COURT REPORTER
614-719-3316

```
 1                            WEDNESDAY AFTERNOON SESSION

 2                               APRIL 24, 2013

 3                                   - - -

 4            THE COURT:  Would counsel please identify themselves

 5       for record beginning with counsel for the plaintiff.

 6            MR. TULENCIK:  Aaron Tulencik, T-U-L-E-N-C-I-K,

 7       counsel for the plaintiffs.

 8            MR. MASON:  Ronald Mason, M-A-S-O-N, counsel for the

 9       plaintiffs.

10            MR. BARCH:  Brian Barch, counsel for the defendant.

11            MR. ORRAND:  Raymond Orrand, administrator.

12            THE COURT:  Could you spell your last name, please?

13            MR. ORRAND:  O-R-R-A-N-D.

14            THE COURT:  We're here for -- pursuant to 65.1 of

15       the local rules, and Rule 65(b) under Federal Rules of

16       Civil Procedure.

17            Mr. Mason and Mr. Tulencik, who is going to speak on

18       behalf of the plaintiff?

19            MR. TULENCIK:  I will, Your Honor.

20            THE COURT:  This is your motion.  What is the basis

21       for the irreparability first, and the immediacy?

22            MR. TULENCIK:  The basis for irreparable harm is the

23       fact that certain employees have either already lost

24       insurance benefits, even though they were eligible, and

25       certain employees will very soon in the future lose
```

1    insurance benefits even though they're otherwise eligible,

2    based upon the disputed contributions to a retired

3    employee, Mr. Newlon.

4        There is a dispute over the amount owed to the fund

5    with respect to Mr. Newlon's contributions.  And in doing

6    so, any future contributions – and past contributions, I

7    should add – that the plaintiff has paid into the fund has

8    been credited towards that dispute as opposed to up-to-date

9    contributions for certain employees on which those benefits

10   were made.  And in doing that, those employees are not

11   being credited for the hours worked.

12       THE COURT:  Okay.  Why can't certain of these

13   alleged injuries be redressed by monitary damages?

14       MR. TULENCIK:  Case law suggests that it's not --

15   simply losing insurance benefits isn't oh, well, we'll just

16   give them their premiums for out-of-pocket expenses.  They

17   can suffer -- one court points out that the purpose of

18   insurance is to cover unexpected costs.  You don't know

19   what those unexpected costs may be, therefore, it is not a

20   monitary harm.  And you are suffering certainly anxiety

21   over what happens if you're injured --

22       THE COURT:  Plaintiff Newlon seeks 14,000 in pension

23   payments; is that right?

24       MR. TULENCIK:  Around that.  We don't know the exact

25   amount.

1          THE COURT:  That amount can be ascertained.  And if

2     the defendant has to pay that amount, then Newlon is made

3     whole, correct?

4          MR. TULENCIK:  Newlon would be made whole, correct.

5          THE COURT:  Now, Plaintiffs Bunn, Karcher, Lantz,

6     Morgan -- is it Schau?

7          MR. TULENCIK:  My understanding is it's Schau.

8          THE COURT:  Schau. -- and Welch had their health

9     insurance benefits discontinued.  That's what your claim

10    is?

11         MR. TULENCIK:  That's our claim, yes, sir.

12         THE COURT:  The defendants have responded in a

13    pleading filed today that certain of these defendants never

14    had their insurance benefits discontinued.  Am I right

15    about that?

16         MR. BARCH:  Correct.  It's either an issue of that,

17    or basically some of them are just not in a position where

18    they would receive benefits anyway.  Now, the first thing I

19    would mention is Chad Karcher, although mentioned in the

20    plaintiff's motion for temporary restraining order, they're

21    not named as a plaintiff in this case.  So they're not --

22    so obviously, since they're not a party, they're not really

23    entitled to injunctive relief here.

24         I think the best way I can describe it is kind of go

25    one by one through -- there's seven plaintiffs, one of

1   which is Bunn Enterprises.  That leaves us six plaintiffs

2   we're talking about whether there may be a potential issue

3   of health insurance.

4        THE COURT:  I'm going to give you your opportunity,

5   obviously, to respond to Mr. Tulencik.  But what I want to

6   know first of all, as a factual matter, is which of these

7   plaintiffs never had their health insurance benefits

8   discontinued.

9        MR. BARCH:  Well, there's only -- right now, I mean

10  there's really only been -- among the plaintiffs that had

11  been listed in this complaint, we're only talking about

12  one, which is Mark Morgan.

13       THE COURT:  So Morgan's was never discontinued?

14       MR. BARCH:  I apologize.  He is the one that had had

15  his benefits discontinued.

16       THE COURT:  But Bunn, Karcher, Lantz, Schau and

17  Welch never had their benefits discontinued?

18       MR. BARCH:  With regard to Karcher, his was

19  discontinued for one month and he did incur some

20  out-of-pocket expenses which were later reimbursed by the

21  health and welfare benefits once there was money --

22       THE COURT:  So he's whole?

23       MR. BARCH:  He's whole at this point.

24       THE COURT:  As we sit here right now, Mr. Karcher

25  has health insurance benefits?

1          MR. BARCH:  To the best of my knowledge, he does.  I

2    should also note that Mr. Karcher is not an employee of

3    Bunn Enterprises.

4          THE COURT:  How about Bunn?

5          MR. BARCH:  He has health insurance benefits until

6    July 31st of 2013.  The last time he lost health insurance

7    benefits, according to the records I was able to find in

8    the very short amount of time I had available to me, was

9    2003.

10         THE COURT:  Isn't it possible -- now, I don't

11   purport to understand how your business operates, but in

12   this information/technology era, there has to be a button

13   that you can push to tell whether somebody is or is not

14   insured.  I mean, that's not -- it doesn't seem to be a

15   difficult inquiry.

16         MR. BARCH:  Well, with Karcher -- and I understand

17   what you're saying.  We certainly have a computer database,

18   basically, which allows us to bring up the records.  But

19   with that said, in order to verify the eligibility, we

20   still have to make sure -- we have to look at the

21   contributions that have been made by the employer to be

22   absolutely certain we know what the eligibility status is

23   of that member slash operator slash employee of Bunn

24   Enterprises.

25         THE COURT:  Mr. Barch, I heard every word you said.

1   I have no idea what you just told me.

2       Let me ask the question a different way.  I just

3   want kind of a yes or no answer.  Is Mr. Lantz insured at

4   this point?

5       MR. BARCH:  Mr. Lantz is insured.  He has been

6   insured since February 2008.  Now, he is retiring as

7   April 30th, 2012, but he has made the option of

8   basically -- because once you retire, then, in order to

9   remain within the health and welfare benefits plan, you

10  have to choose -- you have to have a deduction out of your

11  pension check in order to maintain eligibility.  He has

12  chosen that option.

13      THE COURT:  Is Mr. Morgan insured?

14      MR. BARCH:  Mr. Morgan is not insured at this point.

15  His eligibility expired on January 31st of this year.

16      THE COURT:  Because?

17      MR. BARCH:  There's not enough money at this point

18  to cover --

19      THE COURT:  He's the object of this lawsuit?

20      MR. BARCH:  Correct.

21      THE COURT:  How about Mr. Schau?  Is he insured?

22      MR. BARCH:  Mr. Schau -- now, the complicated thing

23  with Mr. Schau is I believe he's a member of a different

24  union, Local 181.  Now --

25      THE COURT:  So is the short answer no?

1      MR. BARCH:  Well, we don't know whether -- he's not

2   insured by us, but he's not a member of Local 18 either.

3   He is a member of a different local.

4      Now, there, Bunn has paid hours for Michael Schau.

5   But with that said, assuming for the moment that he is

6   eligible for health and welfare benefits under Local 18,

7   basically, he would not be a participant because he hasn't

8   worked enough hours.

9      THE COURT:  How about Mr. Welch?

10     MR. BARCH:  Mr. Welch is also a member -- now he is

11  a member of Local 841.  He was a member of Local 18, but he

12  transferred to Local 841 in July of 2012.  Now, Bunn

13  Enterprises did make contributions on Mr. Welch's behalf to

14  Local 18.  And basically what has happened here is back in

15  December, Mr. Welch signed what's called a reciprocity

16  agreement, which means that he requested that Local 18, in

17  the future, transfer any payments made by any of his

18  employers for health and welfare benefits, that they be

19  transferred over to a different local which I believe is a

20  local in Indiana located in Terre Haute.  I couldn't tell

21  exactly which one because the handwriting on the form was

22  not readable.

23     Now, with that said, we have received payments from

24  Bunn Enterprises on behalf of Mr. Welch, but according to

25  our records, they've been transferred to Local 841.

1        THE COURT:  So is he insured: Mr. Welch?

2        MR. BARCH:  He's not insured through us, but he's

3    also not a participant in our health and welfare plan

4    either.  That would be something that 841 would have to

5    confirm.

6        THE COURT:  Okay.  So Mr. Newlon, then, is the only

7    one in that -- in the category of someone who has lost

8    pension payments.  Is that right, Mr. Tulencik?

9        MR. TULENCIK:  Yes.  He has only lost pension

10   payments which we believe he is rightfully due and are

11   being withheld.

12       THE COURT:  Now, let's turn our attention to these

13   other plaintiffs.  You've heard what Mr. Barch has said

14   about whether they had health insurance benefits.  So

15   Mr. Bunn has until -- is it July of '13?

16       MR. TULENCIK:  July 31, 2013, his benefits will run

17   out per their policy of not crediting his payments.

18       THE COURT:  So the only reason they will run out in

19   '13 is that they haven't credited the payments?

20       MR. TULENCIK:  Correct.

21       THE COURT:  But because we'll have a PI hearing

22   before then and he is presently covered, there's no

23   immediacy of harm?

24       MR. TULENCIK:  If, in fact, we do receive a decision

25   by then, that would be correct, Your Honor.

1              THE COURT:  Let me assure you that you will receive

2      a decision by then.

3              MR. TULENCIK:  Okay.

4              THE COURT:  And there's no irreparability because at

5      the present time he's covered?

6              MR. TULENCIK:  At the present time Mr. Bunn is

7      covered.

8              THE COURT:  Let's move on to Mr. Karcher.  He has

9      disability for one month left?

10             MR. TULENCIK:  Yes.  And he is not a named

11     plaintiff.

12             THE COURT:  Karcher is not?

13             MR. TULENCIK:  Not a named plaintiff, sir.

14             THE COURT:  So we can skip over Mr. Karcher?

15             MR. TULENCIK:  Correct.

16             THE COURT:  How about Mr. Lantz?  He is insured?

17             MR. BARCH:  That is correct.

18             THE COURT:  So you take him out of the calculus.

19             MR. TULENCIK:  It's my understanding, if he does not

20     retire, his benefits would expire May 31, 2013.

21             MR. BARCH:  That would not be our understanding.

22             THE COURT:  What is your understanding, Mr. Barch?

23             MR. BARCH:  According to our records, Mr. Lantz --

24     again, he retires on April 30th of this year, five days

25     from now.  It's our understanding that basically he has

1    chosen -- upon his retirement, he has chosen to self-pay on

2    his health and welfare benefits through a deduction from

3    his pension check.  As long as he does that, he will retain

4    and continue on with eligibility in our health and welfare

5    plan.

6           MR. TULENCIK:  What if he does not retire and

7    continues working for Bunn?

8           MR. BARCH:  Well --

9           MR. TULENCIK:  The document attached to your motion

10   would seem to indicate end date of May 31, 2013.

11          MR. BARCH:  Well -- May 31, 2013?

12          MR. TULENCIK:  Yes.

13          MR. BARCH:  I apologize.  It should be April 30th,

14   2013.

15          THE COURT:  That's when his benefits run out?

16          MR. BARCH:  That's when he retires.  That's his

17   retire date.

18          THE COURT:  That's Mr. Lantz?

19          MR. BARCH:  That is correct.  As far as if he

20   chooses not to pay in, then it could expire at that point.

21   But that's -- that's entirely speculative.  I mean, at this

22   point, he has chosen the self-pay.

23          MR. TULENCIK:  I'm simply saying if he does not, in

24   fact, retire and continues working for Bunn, he's going to

25   lose benefits in six days.

1        THE COURT:  Is that correct, if he doesn't retire?

2        MR. BARCH:  If he does not retire, honestly, I'm not

3  sure about that.  I did not have time to research that at

4  this point, to see what his status would be if he refuses

5  to self-pay.  But he has already filled out the paperwork

6  for the self-pay, and so at this point, any pension checks

7  that he receives from the pension fund will have health

8  insurance -- will have a deduction for his health insurance

9  until he fills out a form that says he wants to terminate

10  that.

11       THE COURT:  How about Morgan, Mr. Tulencik?

12       MR. TULENCIK:  He does not have insurance benefits

13  right now.

14       THE COURT:  And Mr. Schau?  It says he's not insured

15  by the defendant but he is a member of a different local.

16  Are you alleging that in Mr. Schau's case that had Bunn

17  Enterprises paid what defendants alleged he owed, that he

18  would be insured?

19       MR. TULENCIK:  It's my understanding if Schau were

20  still working for Bunn, he would not be eligible for

21  insurance because he is not being credited his hours.

22       THE COURT:  Is that right, Mr. Barch?

23       MR. BARCH:  Mr. Schau is a member of Local 181.  I

24  mean, I could not tell you what his eligibility is with

25  Local 181.  It would be based on whatever their eligibility

13

1    standards are.

2         MR. TULENCIK:  My client is losing employees because

3    they're losing health insurance.

4         MR. MASON:  Who wants to go work for a company that

5    you can't get your health insurance credit because the

6    pension fund is taking the money that they would get credit

7    for their health insurance and putting it to a debt that we

8    question?

9         THE COURT:  So it's not an inquiry driven by the

10   local, the membership in the particular local, but it's an

11   inquiry more driven by where you work?

12        MR. BARCH:  Well, Your Honor, they're -- as far as

13   it relates to these plaintiffs, within the context of -- it

14   wasn't for the fact that we're applying contributions to

15   late charges and delinquent contributions, that because of

16   that these people don't have health insurance and they're

17   entitled to injunctive relief.  When you're talking about a

18   Michael Schau or a David Welch, really that issue is

19   irrelevant.  Even if we were applying the contributions in

20   a way that they want it, they're eligibility would not --

21   whether they're eligible or not eligible would not be

22   affected by how we apply those payments.

23        MR. TULENCIK:  I mean, if Bunn is making payments

24   based on hours they work and you apply those payments to

25   Mr. Newlon's delinquent contributions, they're not being

1    credited for those hours.

2         MR. BARCH:  There you're talking about Mr. Newlon.

3    I was referring to Mr. Schau and Mr. Welch.

4         MR. TULENCIK:  Correct.  But if we make

5    contributions for Mr. Schau for hours that Mr. Schau

6    worked, you're not crediting Mr. Schau for those hours.

7    You're putting those hours toward the delinquent

8    contribution of Mr. Newlon.

9         MR. BARCH:  That's true.  But, as far as whether

10   he's eligible or not, it's not necessarily dependent upon

11   the application.  A lot of it also depends on what his

12   eligibility is as relates to -- as relates to 181.

13        MR. TULENCIK:  Correct.  I'm saying my client is

14   losing employees because of the way you're administering

15   your policy.

16        MR. BARCH:  I don't think that's the issue at hand

17   here, I don't think.

18        MR. MASON:  It is mine.

19        THE COURT:  Gentlemen, I'm trying to really get an

20   understanding of how this works and I need you to talk to

21   me.

22        MR. BARCH:  I understand, Your Honor.

23        THE COURT:  I'm the only decision maker in the room.

24        The last one is Mr. Welch.  See, Mr. Welch and

25   Mr. Schau seem to be in the same situation.  They are not

```
 1   members -- they're members of different locals --
 2        MR. BARCH:  Correct.
 3        THE COURT:  -- if I understand the defense position.
 4   And then therefore they aren't covered because they're
 5   members of different locals.
 6        MR. BARCH:  Correct.
 7        THE COURT:  The plaintiffs are taking a position
 8   that even if they weren't members of different locals and
 9   were working at Bunn, if they worked at Bunn, because of
10   the alleged payments that Bunn has not made, these
11   gentlemen, Messrs. Schau and Welch, would not be covered.
12   That's what you all are alleging.
13        MR. TULENCIK:  Based on how they are administering
14   their payments, that is correct.
15        THE COURT:  And you disagree with that?
16        MR. BARCH:  Yes.  Let me put it to you -- let me
17   kind of go back through it again.  Again, Mr. Welch signed
18   a reciprocity agreement on December 17th, 2012, and we
19   received it February 28th, 2013.
20        Now, last year we received payments for Mr. Welch
21   for health and welfare benefits.  And to be clear, what a
22   reciprocity agreement means is that he has asked us to
23   basically apply any payments which we receive on his behalf
24   and transfer it over to his home local.  Okay?  And the
25   agreement also states that the health and welfare plan that
```

1    covers him is the one that is offered by Local 841.

2         Now, over four different months for 2012, Bunn has

3    made contributions, including contributions for the hours

4    for Mr. Welch.  All the payments -- according to our

5    records, all the payments we received on behalf of

6    Mr. Welch have been transferred to 841.  So, if his

7    eligibility is in question here, then it's an eligibility

8    that -- an eligibility issue that relates to 841, not to

9    us.

10        MR. TULENCIK:  Your Honor, if I may.

11        THE COURT:  Yes.

12        MR. TULENCIK:  And the argument we're making is --

13   and I understand what Mr. Barch is saying: because they're

14   members of different locals, that money gets credited to

15   them.  Had they remained members of Local 18, that money

16   was not credited towards them.

17        THE COURT:  Stop right there.  Is that correct?

18        MR. BARCH:  Well --

19        THE COURT:  I just want to keep this simple because

20   I don't want the record to be cluttered and I want answers

21   to my questions directly.  Now, if Schau and Welch had

22   remained members of Local 18, would they be insured today?

23        MR. BARCH:  I would have to go back and look and see

24   whether they would be or not.  The fact that they signed

25   reciprocity agreements to have the money transferred to 841

1    is what we're operating on today, basically.

2          Bunn Enterprises has made payments to Local 18 and

3    they've been transferred to Local 841 as requested under

4    the reciprocity agreement that Mr. Welch signed.

5          THE COURT:  I need to clarify this.  So if they're

6    members of Local 841, can they go and work for Bunn

7    Enterprises as members of Local 841?

8          MR. TULENCIK:  Yes.

9          THE COURT:  So let's say that Welch and Schau, as

10   members of -- was Schau also a member of 841?  I know Welch

11   was.

12         MR. BARCH:  To the best of my knowledge, he is a

13   member of 181.

14         THE COURT:  181?

15         MR. BARCH:  Correct.

16         THE COURT:  Let's say that Schau was a member of

17   181, Welch is a member of 841, and they go to work for Bunn

18   today.  Are they covered?  Are they insured?

19         MR. BARCH:  They would not be insured under our

20   health and welfare benefits.

21         THE COURT:  If they're members of Local 18, are they

22   insured?

23         MR. BARCH:  But that also depends on the number of

24   hours.  If you want to add in --

25         THE COURT:  Go ahead, Mr. Orrand.

18

1          MR. ORRAND:  I can keep it simple.  The way

2    reciprocity works is the contractor sends money to us, we

3    send it back to the home local the same day.  And whatever

4    eligibility rules apply to that local -- we have different

5    eligibility rules.  They vary across the country.  But

6    being members of other locals, when that money comes in, we

7    transfer it out within a week; it goes back to their home

8    local.

9          THE COURT:  Okay.  So that means that as we sit here

10   today, Schau and Welch are not covered?

11         MR. ORRAND:  Not through Local 18, because they are

12   members of other locals.

13         THE COURT:  But they're covered through Local 841 in

14   the case of Welch, and 1181, or whatever it is, in the case

15   of Schau.

16         MR. ORRAND:  They would have to contact those locals

17   to find out.

18         THE COURT:  So we don't know.  We don't know.

19         MR. BARCH:  Right.

20         THE COURT:  Do you have any further information?

21         MR. TULENCIK:  No, just what we reiterated before.

22   I understand they're getting paid.  Bunn pays them money.

23   It gets credited towards Schau and Welch because they're in

24   different locals.  When Bunn makes payments for employees

25   of Local 18, that money does not get credited to those

1    employees.  So the moral of the story is don't belong to

2    Local 18 and you will get your money.  If you belong to

3    Local 18, you're not going to get credited for your hours,

4    you're not going to get your money, and it's going to go to

5    Mr. Newlon to make up for the quote/unquote contribution

6    dispute which is the reason we're here.

7         MR. ORRAND:  May I interject for a second?

8         THE COURT:  Go ahead.

9         MR. ORRAND:  This has all arisen out of a certified

10   audit we did on the contractor's payrolls.  We had audits

11   in the past with no findings.  This turned up findings.  It

12   somewhat mirrors a credit card debt.  If you have a rolling

13   balance on your credit card, it goes to the oldest amount

14   first.  The reason we do that is to keep the members that

15   worked for Bunn a year ago, a year and a half ago -- rather

16   than apply the money to the guy who just got hired, a

17   old-timer would get his benefits and the new guy would have

18   to wait until the old balance is brought current, if that

19   simplifies it.

20        MR. MASON:  If I could respond to that.  What we're

21   dealing with here is an audit that was done on an

22   individual, Mr. Newlon, who was not working -- doing work

23   under the collective bargaining agreement.  He was not

24   doing bargaining work.  The union has decided that even

25   though he's out mowing the grass, that because he worked

1    for Bunn, they're going to count those as hours worked even

2    though, under the Sixth Circuit case law that's directly on

3    point, it's not considered money that the fund is entitled

4    to.  So what has happened is, is the fund, by doing this

5    audit on what we say is improper calculation of his money,

6    is engaged in, for want of a better term, extortion against

7    my client because what they're doing is they're taking all

8    the money of the current workers, applying it to a very

9    questionable debt.  This is not where we signed a credit

10   card and we charged it up.  This is a very questionable

11   debt.

12       But in order to assert influence against Bunn, to

13   deny Bunn's future workers -- who's going to come from

14   Local 18 and work for Bunn while we have the dispute going

15   on if their pension plan and their health and welfare

16   benefits are going to another person?  And the bank of

17   money that they have, it gets credited for their own health

18   insurance, they wind up without health insurance over this

19   disputed claim.

20       So it is a great tactic to use against the company.

21   As a matter of fact, it was acknowledged in their brief

22   that that's exactly what this is.  It is a tactic that they

23   are using to force Bunn to pay a debt that Bunn does not

24   actually lawfully owe.  It needs workers.  We are into the

25   spring and summer for a construction company that has

1    already got contracts, that needs employees.  Those

2    employees -- Local 18 covers the entire state of Ohio.  So

3    any and all work that Bunn is going to be doing in the

4    state of Ohio, they're going to need referrals from Local

5    18.

6          How are they going to get those employees if they

7    say you -- come to me and say, Ron, do you want to go work

8    for Bunn?  I say, What happens to my health insurance and

9    pension money?

10         Well, that's getting credited by somebody else.  And

11   by the end of the summer, I'm going to be without health

12   insurance because of the way they're crediting the current

13   employees.  That's what's going on here.

14         All we're asking for is saying we have this dispute

15   of $50,000.  Let's litigate it.  If we owe it, we'll pay

16   it.  But for God's sakes, don't take our current workers

17   and deny them health insurance because you're trying to

18   force us to pay the $50,000.  And that's what's going on.

19         And all we're asking for is -- and we're making the

20   payments.  And the courts and the case law say if you're

21   making current payments on current employees, the funds

22   should credit those people those benefits.  Whether or not

23   you're in another jurisdiction and you qualify or not,

24   that's all in the basis of the numbers.  But don't deny

25   these employees the payments that we're making on their

1    behalf over a disputed debt where we never signed the

2    credit card to begin with.

3         MR. BARCH:  May I respond to that argument?

4         THE COURT:  Sure.

5         MR. BARCH:  Okay.  And I'll do it briefly.

6         In a collective bargaining agreement, which Bunn

7    Enterprises signed, there is paragraph 35.  And paragraph

8    35 simply states all hours worked by all operators -- and

9    I'm paraphrasing this.  It is not a word-for-word quote of

10   paragraph 35.  That all hours worked by an operator must be

11   paid.  And that includes not only work that's traditionally

12   considered operating work such as operating a crane,

13   operating a bulldozer.  It also applies to other tasks,

14   whether it's painting a fence or pulling weeds.

15        And I would say the cases are very well settled.

16   And I don't use that word lightly, but there is a line of

17   cases which clearly states that when an operator -- that

18   any time an operator works, whether it's -- regardless of

19   the task, those hours must be paid.  And there's a line of

20   cases which support that.  And there's even a case here a

21   few years ago involving the trust funds, which you presided

22   over, where there was a ruling by you which basically

23   states that very thing.

24        And I think this issue has been litigated enough to

25   where it's -- you have M.L. Noe versus R.D. Jones.  You

1  have <u>Orrand versus Cheryl Shope</u>.  We had a case several

2  years ago, it was the trust funds here versus Keim

3  Concrete.  And there are a couple other cases too.  In each

4  one of those cases, you had a situation where the

5  defendant, which was the employer, contesting that work

6  that was not done by an operator which was not considered

7  traditional operating work was not covered by the

8  collective bargaining agreement.  In each one of those

9  cases the Court had ruled that the employer must pay for

10  all of those hours.

11       MR. TULENCIK:  Your Honor, that paraphrase of the

12  contract was very disingenuous, and also the case law cited

13  is not the case law in the Sixth Circuit.  First of all,

14  the paragraph states employees who perform work under this

15  agreement, the only way they're performing work under this

16  agreement is the work stated and outlined in the agreement.

17  And that's made very clear.

18       The cases he cites to that are here in the southern

19  district were from 2002 and 1992.  And the Sixth Circuit --

20       THE COURT:  Mine must have been the 2002 case.

21       MR. TULENCIK:  I believe it was Judge Sargus.

22  <u>Michigan Laborers Health Care Fund versus Grimaldi</u>, which

23  was a Sixth Circuit case, made it very clear that it's

24  covered work.

25       MR. BARCH:  Your Honor, *Grimaldi* dealt with the

1    issue of a particular statute: 29 U.S.C. 1059. That was a

2    case in which there is a question mark as far as the number

3    of hours that were worked by -- that was worked by the

4    operators. In other words, going back to that statute,

5    that statute basically states that the employer has a duty

6    to provide -- to maintain specific records which allows an

7    auditor for a trust fund to be able to specifically

8    calculate the hours worked by an operator, which is an

9    entirely separate issue from the issue of whether or not

10   work -- whether non-operator work is covered; an entirely

11   separate issue.

12        THE COURT: All right. Okay. I got it. I'm going

13   to take a brief recess. It's 2:20 now. We're going to

14   stand in recess until -- well, actually it's 2:22. It will

15   be short; until 2:30.

16     (Recess taken from 2:21 p.m. to 2:28 p.m.)

17        THE COURT: Upon consideration of the arguments of

18   counsel and the papers that had been filed, the Court

19   denies the motion for a TRO with respect to Plaintiff

20   Newlon inasmuch as his alleged wrongs can be redressed by a

21   monitary award. And the law is well settled that an injury

22   typically is not irreparable if it's compensable by a

23   monitary award. Mr. Newlon seeks approximately $14,000 in

24   pension payments that had not been paid. We can ascertain

25   the exact amount, and therefore the TRO with respect to him

1    is denied.

2         The TRO with respect to Mr. Bunn is also denied

3    inasmuch as he is insured at least until July of this year.

4    Mr. Karcher is not a plaintiff in this case.  But with

5    respect to Messrs. Lantz, Morgan, Schau and Welch, the TRO

6    is granted.  With respect to Schau and Welch, it's granted

7    if either of them works for Bunn in the interim, and it's

8    granted with respect to Messrs. Lantz and Morgan.

9         Now, that TRO I'm going to leave in place for

10   approximately ten days.  We need to divine a day to have

11   the preliminary injunction hearing.  So I could have it --

12   how long do you think this will take?  I start a trial on

13   Monday, and it's going to last probably through the week,

14   I'm thinking.

15        MR. MASON:  Monday the --

16        THE COURT:  Monday the 29th.  I think the easiest

17   date might be the 6th.

18        MR. TULENCIK:  We have a trial.

19        MR. MASON:  We have a trial with the National

20   Relations Board on the 6th.  I can ask the ORB if they'll

21   kick the trial.  I'm not sure they will.

22        THE COURT:  No.  It's possible that we could go on

23   the 2nd.  That's assuming that Throckmorton only lasts

24   three days.  I could also do the afternoon -- I could

25   possibly do the afternoon of the 3rd or the late morning.

1          How long will your case in chief last at the PI

2  hearing?

3          MR. MASON:  Are we going to roll the preliminary

4  into permanent and just consolidate to a single hearing?

5          THE COURT:  I don't know.  You can tell me whether

6  you want it to be a trial on the merits.

7          MR. MASON:  I mean, we're willing to do that and

8  roll the whole thing in and just be -- put the whole thing

9  together.  And it would probably be about a day, day and a

10  half of, you know, the testimony from the various

11  individuals.  And if we can set that like for May 14, if we

12  get an agreement from all parties that that would be the

13  date to go.  I don't know how much time the other side

14  needs to put theirs on.

15          MR. BARCH:  I don't know if we can put together a

16  whole trial on the merits by that time.

17          THE COURT:  Let's keep it to a preliminary

18  injunction hearing then.  How long is it going to take to

19  put on your case?

20          MR. MASON:  A couple hours.

21          THE COURT:  And you?

22          MR. BARCH:  Probably no longer than that.

23          THE COURT:  Okay.  So we're talking about a full

24  day?

25          MR. BARCH:  Yeah.

```
 1              THE COURT:  Well, we could provisionally set it for
 2    May 2nd, or maybe I could move my -- there's another
 3    possibility I can move the stuff that I have in the
 4    afternoon of May 3rd over to May 2nd.
 5              Here's what we'll do.  Let's set it for the 2nd.
 6    We'll set it for the 2nd.  Then, if I'm still in trial --
 7    if it looks like I'm going to still be in trial, we can
 8    start it perhaps -- even if I'm in trial, I shouldn't be in
 9    trial in the afternoon of the 2nd.  So worse case scenario,
10    I can start it the afternoon of the 2nd.  All that we don't
11    finish, I can continue to the afternoon of the 3rd.  So
12    I'll keep my criminal calendar.  Throckmorton shouldn't
13    last any more than three-and-a-half days.
14              So count on this to begin on the 2nd, and we will
15    keep you apprised.  I'll know certainly not later than the
16    30th or so whether that case that begins on the 29th is
17    going to last longer.
18              MR. BARCH:  A question, Your Honor.  Just to make
19    sure, do the actual parties have to attend this preliminary
20    hearing?
21              THE COURT:  No.  The parties don't have -- all I
22    need is your witnesses.
23              MR. BARCH:  Okay.
24              THE COURT:  I want simultaneous briefing addressing
25    the four prongs of the test for an issuance of a
```

1    preliminary injunction by close of business on the 26th;

2    reply briefs, if any, by close of business on the 30th.

3    Ten-page limitation on the opening briefs; five-page

4    limitation on the replies.

5        We'll start at 9:30 on May 2nd, unless I indicate

6    otherwise.  And assuming that we're going to go at 9:30, I

7    want you here by nine o'clock.  I have a nine o'clock

8    conference call.  It shouldn't last anymore than 15

9    minutes.  But I want everybody here in your places so we

10   can begin promptly at 9:30.

11       Now, are you requesting that the plaintiff post a

12   bond, Mr. Barch?

13       MR. BARCH:  Yes, if possible.

14       THE COURT:  Well, I'm going to have him post a

15   nominal bond in the amount of -- how much are we talking

16   about in terms of premiums for these four insured

17   gentlemen?  Do you have any idea?  It's difficult to

18   quantify.

19       MR. ORRAND:  I can't say.

20       THE COURT:  I'm going to have them post a bond of a

21   thousand dollars.  We're only talking about -- we're

22   talking about eight days.  So that's a nominal amount.

23       MR. MASON:  We appreciate that, Your Honor.  If

24   counsel on the other side agrees to waive bond at some

25   point, because it is nominal, would that be okay, too?

29

1          MR. ORRAND:  Excuse me, Your Honor.  I think we can

2     waive that in the interest of simplicity.

3          MR. MASON:  Thank you.  It's just a lot of time.  It

4     costs us a hundred dollars for a thousand dollar bond.

5          THE COURT:  All right.  Is there anything else?

6          MR. MASON:  No, sir.  Thank you so much.

7          MR. BARCH:  Thank you, Your Honor.

8       (Proceedings concluded at 2:40 p.m.)

9                              - - -

```
 1                    C E R T I F I C A T E

 2

 3          I, Shawna J. Evans, do hereby certify that the

 4     foregoing is a true and correct transcript of the

 5     proceedings before the Honorable Algenon L. Marbley, Judge,

 6     in the United States District Court, Southern District of

 7     Ohio, Eastern Division, on the date indicated, reported by

 8     me in shorthand and transcribed by me or under my

 9     supervision.

10

11

12                              s/Shawna J. Evans
                                Shawna J. Evans, RMR
13                              Official Federal Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```