IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BUNN ENTERPRISES, INC., *et al.*, : | |
| : | Case No. 2:13-CV-00357 |
| Plaintiffs, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Kemp |
| OHIO OPERATING ENGINEERS : | |
| FRINGE BENEFIT PROGRAMS, *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

### I.  INTRODUCTION

This matter is before the Court on Defendants'[1] Motion for Summary Judgment (Doc. 33). Defendants seek summary judgment on all claims by all Plaintiffs,[2] as well as on all counterclaims, on the grounds that the language of the Collective Bargaining Agreement ("CBA") requires fringe benefit contributions to be made for all hours paid to all employees, without distinction to whether the work is "covered work" under the CBA. Plaintiffs respond that the Court's prior cases misconstrue the CBA, and Sixth Circuit precedent, and should be reconsidered. For the reasons set forth herein, Defendants' Motion is **GRANTED**. Plaintiff's claims are hereby **DISMISSED**.

### II.  STATEMENT OF FACTS

The facts of this case have been set out in detail in the Court's Opinion and Order granting in part and denying in part Plaintiff's Motion for a Preliminary Injunction. (Doc. 24). For the purposes of this Motion, the Court need not restate them.

---

[1] "Defendants" here includes Raymond Orrand and the Trustees of the Ohio Operating Engineers Health and Welfare Plan, Ohio Operating Engineers Pension Fund, Ohio Operating Engineers Apprenticeship Fund, and Ohio Operating Engineers Safety & Education Fund.
[2] "Plaintiffs" refers to Bunn Enterprises, Inc. ("Bunn"), and Kevin Bunn, Delbert Newlon, Daniel Lantz, Mark Morgan, Michael Schau, and David Welch (the "Individual Plaintiffs").

### III. PROCEDURAL POSTURE

Plaintiffs commenced this action on April 16, 2013 (Doc. 1). On the same day, Plaintiffs moved for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") (Doc. 4). On April 25, 2013, the Court granted in part and denied in part the request for a TRO. (Doc. 8). Two months later, on June 19, 2013, the Court granted a PI as to Plaintiff Morgan, but denied the request for a PI in all other respects. (Doc. 24). On May 30, 2013, Plaintiffs filed their Amended Complaint. (Doc. 18). Defendants answered and filed their counterclaims on June 12, 2013. (Doc. 22). Plaintiffs answered the counterclaims on July 3, 2013. (Doc. 29).

On June 14, 2013, Defendants moved for Judgment of the Pleadings with regard to all Individual Plaintiffs, on the grounds that they failed to exhaust administrative remedies. (Doc. 23). This Motion remains pending before the Court. On August 26, 2013, Defendants filed the Motion for Summary Judgment *sub judice*. (Doc. 33). The matter has been fully briefed. (*See* Doc. 41; Doc. 43). On September 9 and September 20, 2013, Defendants Local 18 and Joseph Lucas (the "Union Defendants"), respectively, filed their answers to the Amended Complaint. (Doc. 35; Doc. 39). On December 20, 2013, the Union Defendants moved for judgment on the pleadings (Doc. 44). This Motion has also been fully briefed. (*See* Doc. 45; Doc. 47).

### IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, (1986)). The nonmoving party must then present "significant probative evidence" to

show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339-40 (6th Cir. 1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)). Summary judgment is inappropriate, however, "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## V.   ANALYSIS

Defendants argue that "the only dispute between the parties is the legal issue of whether the CBA requires contributions based upon all hours paid," as Defendants urge, or whether Bunn is obligated to make contributions only based upon hours worked that are "covered" under the CBA, as Bunn alleges. (*Mot. for Summ. J.*, Doc. 33 at 8). Defendants maintain that the CBA's language "has remained unchanged . . . for decades," and has been "repeatedly held by this Court to require contributions based upon all hours paid to the employees," regardless of "[w]hether an employee is performing non-covered work for some of the hours he worked." (*Id.*).

3

Defendants further argue that, as a result of Bunn's contractual obligations under the CBA, Bunn has an additional, statutory obligation under 29 U.S.C. § 1145 to make fringe benefit contributions in this case, since § 1145 requires that every employer obligated to make contributions under the terms of a collectively bargained agreement "shall . . . make such contributions in accordance with the terms and conditions of such . . . agreement." (Doc. 33 at 10-11). Defendants accordingly seek the full judgment authorized by 29 U.S.C. § 1132(g), which requires the Court to award any unpaid contributions, interest thereon, liquidated damages not to exceed 20% of the unpaid contributions, attorneys' fees, and costs. (Doc. 33 at 11-12) (citing 29 U.S.C. §§ 1132(g)(2)(A)-(E)).

Finally, Defendants add that by resolving the Funds' claim against Bunn, the Court will also resolve the Individual Plaintiffs' claims, since once the judgment is paid, the Individual Plaintiffs "will be entitled to any benefits that the Plan has to offer based upon the contributions paid on their behalf." (*Id.* at 13).

Plaintiffs agree that interpretation of the CBA, and specifically whether Bunn is required to pay fringe benefit contributions for all hours worked by each employee, or "for only the hours worked performing the type of work that is expressly outlined in the CBA," is the central issue of this case. (Doc. 41 at 9). Plaintiffs insist, however, that their reading of the CBA is correct.

Plaintiffs first argue that the Court should interpret the CBA "in its entirety," rather than placing the relevant provision "in a vacuum." (*Id.*). Thus, Plaintiff claims that the phrase "for all hours paid to each employee by the Employer *under this Agreement*," (*CBA, Art. V, ¶ 35*, Doc. 18-1 at 19) (emphasis supplied), is understood only by reference to the type of work outlined in Article I of the CBA. Article I defines "work" to mean various types of infrastructure, industrial, and civic construction, including highway, airport, railroad, sewer,

4

utility, power plant, pollution control, waste plant, and water treatment construction.  (*CBA, Art. I, ¶¶ 2(A)-(H)*, Doc. 18-1 at 11).  Reading these provisions, together with Article II's requirement that fringe benefit contributions be paid as set forth in Article V, "plainly indicates," according to Plaintiffs, that an employer "is only required to make fringe benefit contributions for each hour performing work that is covered by the CBA."  (Doc. 41 at 12).  Plaintiffs assert that the First Circuit Court of Appeals reached the same conclusion in *Cent. Pension Fund of the Int'l Union of Operating Engineers & Participating Employers v. Ray Haluch Gravel Co.*, 695 F.3d 1, 8 (1st Cir. 2012).[3]

Plaintiffs seek succor in the Sixth Circuit's decision in *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*.  In that case, the court concluded that the defendant-employer failed to keep adequate records, and therefore could not meet its burden of proving the amount of contributions owed; consequently, the "appropriate penalty" for the employer's violation of its statutory duty to keep adequate records was that the employer should pay "contributions for all hours worked," not just those "covered under the [CBA]."  30 F.3d 692, 697 (6th Cir. 1994).  Plaintiff thus argues that *Grimaldi* recognizes, by implication, that under normal circumstances work not "covered" under the CBA does not require employer contributions.  (Doc. 41 at 14-15).

Paragraph 35 of Article V of the CBA states that fringe benefit contributions "shall be paid" at the rates specified "for all hours paid to each employee by the Employer under this Agreement."  (*CBA, Art. V, ¶ 35*, Doc. 18-1 at 19).  Paragraphs 1 and 2 of Article I of the Agreement explain that the CBA "shall govern the employment of and conditions under which employees shall work and rates of pay they shall receive on work as defined herein," for various counties in Ohio and Kentucky.  (*Art I, ¶¶ 1-2*, *id.* at 11).  As used in the CBA, "work" means

---

[3] On June 17, 2013, the United States Supreme Court granted *certiorari*, 133 S.Ct. 2825, and on January 15, 2014, the Court reversed and remanded, on the grounds that the Funds' appeal was untimely.  134 S.Ct. 773.

"highway construction, airport construction, heavy construction, railroad construction, sewer, waterworks and utility construction, hazardous waste site remediation, industrial and building site, power plant, amusement park, athletic stadium site and pollution control, sewage plant, waste plant, and water treatment facilities construction," as those terms are defined in Paragraph 2, "within the jurisdiction." (*Id.*). In addition, Article II, Paragraph 3 mandates that any employer who becomes a signatory to the CBA "shall be bound by all terms and conditions of this Agreement . . . and furthermore shall be bound to make Health and Welfare payments, Pension payments, Apprenticeship Fund and Safety and Education Fund payments required under Article V for all work performed within the work jurisdiction outlined in Article I of this Agreement." (*Art. II, ¶3*, *id.* at 9).

This Court first considered the terms of the CBA in 1992, in the case *Noe v. R.D. Jones, Excavating, Inc.*, 787 F. Supp. 759 (S.D. Ohio 1992). There, Judge Smith, recognizing that "[t]he determination of the amount of the employer's obligation to contribute to the trust funds when the employees split their time between work covered and work not covered by the collective bargaining agreement is an issue of first impression," relied on a line of Ninth Circuit cases to conclude that "simplification of collection procedures" and "[i]nterpreting collective bargaining agreements in a uniform manner" were critical to protect the funds from "unnecessary collection costs." *Id.* at 764-65. The Court acknowledged the "fairness argument" set forth by the defendant, but reasoned that determining the amount of an employer's obligation "based upon the total hours worked by an employee covered under a [CBA]," rather than distinguishing between "covered" hours and "not covered" hours, was "consistent with th[e] policy concern" for simplification and ease of collection, since "the amount of the contribution obligation can easily be determined by simply examining the employer's payroll records." *Id.* at 765.

After *Noe*, in 1994, the Sixth Circuit decided *Grimaldi*. In that case, the Court of Appeals held that, where an employer fails to maintain adequate records to allow a plan to determine the type of work performed, the burden shifts to the employer to demonstrate that the particular work is not "covered." 30 F.3d at 695-96. The CBA at issue in *Grimaldi*, however, differed significantly from that at issue here, in particular because the parties in *Grimaldi* "stipulated that driveway and sidewalk work was covered by the agreement, and [] also that contributions were not required for other concrete-pouring work." *Id.* at 694. *Grimaldi* did *not* conclude that a CBA may *not* require contributions for both covered and non-covered work.

In 1996, in its first post-*Grimaldi* case, this Court again examined the language at issue here. In *Orrand v. Maintenance Unlimited, Inc.*, Judge Holschuh noted that the Court had already rejected the plaintiffs' preferred construction of the CBA provision, and reiterated that "a signatory employer is required to pay fringe benefits in connection with all hours worked and paid, even for non-covered hours." No. 2:96-CV-00766, Doc. 17 at 4-5 (S.D. Ohio Feb. 24, 1998). The Court further reinforced that this rule is a "prophylactic," designed "to alleviate the unnecessary and undue burden of having to investigate the accuracy of an employer's records regarding assigned duties." *Id.* at 5.

In 2001, this Court again reaffirmed its interpretation. Judge Sargus observed that this Court had several times "construed the exact language at issue here," and "ha[d] consistently reached the . . . conclusion" that the obligation of the employer to make fringe benefit contributions "extends to all hours paid." *Orrand v. Shope*, No. 2:00-CV-1161, 2001 WL 1763437, at *3 (S.D. Ohio Jan. 30, 2001). This Court reasoned that the language of the CBA strongly supported this interpretation, as it requires contributions to be made for "all hours paid to each employee by the employer, without making a distinction between hours paid for covered

7

employment and hours paid for other work." *Id.* at *2. This Court further explained that the benefits to a union and to trust funds from such language is "obvious," since if an employer were entitled to reduce the amount of benefits paid based on hours spend in non-covered work, and if the employer were the sole arbiter of what type of work was performed, and its records the only source of that information, it would be "exceedingly difficult for a fund to dispute an employer's allocation of hours between covered and non-covered work., and it would therefore be possible for an employer to skew its records in such a way as to minimize its contributions." *Id.* This interpretation, then, reduces or even eliminates the "ability to manipulate the facts," and simplifies the audit process. *Id.* The Court recognized that this policy argument would not allow the Court to "rewrite the parties' agreement," but nevertheless the language itself "appears unambiguously to obligate the employer to make contributions for all hours paid." *Id.*

Most recently, in 2010, this Court, following *Shope*, reiterated that "[t]he language of the CBAs is clear that fringe benefit contributions are to be made for all employees performing work covered by the CBA for all hours paid." *Orrand v. Keim Concrete Pumping, Inc.*, No. 2:08-CV-1046, 2010 WL 3447647, at *16 (S.D. Ohio Aug. 30, 2010) (Marbley, J.).

The considerable history of the CBA fringe benefit contributions language in this district led this Court to conclude, earlier in this case, that Plaintiffs were "not likely to succeed on the merits" of their argument that an employer is not required, under the CBA, to make contributions for all employee hours worked. (Doc. 24 at 13). In reaching this conclusion, this Court specifically considered the precedential weight of *Noe*, *Maintenance Unlimited*, *Shope*, and *Keim*, as well as the impact, if any, of *Grimaldi*. (*See id.* at 11-13).

Plaintiffs have offered no arguments which this Court has not already considered and rejected in the last 22 years. The plain language of the CBA, which requires an employer to

8

make contributions for "all hours paid to each employee by the employer," admits of no alternative interpretation. Even were the Court to ignore the weight of precedent, Article II's instruction that employers "shall be bound to make . . . payments required under Article V *for all work performed within the work jurisdiction outlined in Article I*" (*CBA*, Art. II, ¶ 3, Doc. 18-1 at 9) (emphasis supplied) is not, by its own terms, a reference to "covered" and "non-covered" work; rather, the plain language of the Agreement can refer only to the geographical area set forth in Paragraph 1 of Article I, which specifies the relevant counties in Ohio and Kentucky that fall within the "jurisdiction" of the CBA.

Furthermore, the Court's conclusion here harmonizes with the policy concerns raised by the Sixth Circuit in *Grimaldi*: this Court's consistent understanding of the CBA language protects the Funds from burdensome audit procedures and the potential for manipulation by way of inaccurate record-keeping by employers. Just as the *Grimaldi* court used contributions for all hours worked as an "appropriate penalty" to punish an employer for violation of its duty to keep adequate records (where the parties had already agreed that non-covered work would not normally be included in its contribution obligations), this Court's understanding of the CBA works as a "prophylactic," to prevent unscrupulous employers from making unilateral determinations of what type of work was performed, thereby skewing its records to minimize its contributions, which would be exceedingly difficult for the Funds to dispute.

While this policy argument, alone, will not usurp the plain meaning of the CBA's language, when taken in context with the unambiguous words chosen by the Parties, as well as the settled understanding of the CBA language in this district, Bunn's fringe benefit contribution obligation cannot be understood any other way.

### VI. THE UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Union Defendants, Local 18 and Joseph Lucas, move for judgment on the pleadings with regard to Plaintiffs' claim for tortious interference with a contract. (Doc. 44). The Union Defendants argue that because Local 18 is a party to the CBA, it is not subject to liability for tortious interference. (Doc. 44-1 at 9-10). In addition, the Union Defendants argue that since there was, in fact, no breach, a claim for tortious interference cannot lie. (*Id.* at 11-14).

Plaintiffs respond that, although Local 18 is a party to the CBA, it is *not* a party to the Agreements and Declarations of Trust that established the various Funds. (Doc. 45 at 5). Thus, the Union Defendants are strangers to those contracts, and liable for tortious interference therewith. (*Id.*). Moreover, Plaintiff argues that the Union Defendants' "interference with the audit process" was improper, causing certain Plaintiffs to lose health and welfare benefits and pension benefits that the Funds are otherwise contractually obligated to pay. (*Id.* at 9).

The only contractual provisions that Plaintiffs allege have been breached relate to Bunn's obligation to make fringe benefit contributions for "covered" and/or "non-covered" work under the CBA; Plaintiffs' assertion that the Union Defendants "induced the Funds' auditor to include in the audit hours worked by Newlon in capacities other than an Operator" (*see Amended Complaint*, Doc. 18, ¶ 172) is futile since, under the CBA as explained above, the Funds' auditor acted in accordance with the contractual terms. Given the Court's conclusion, Plaintiff's claim for tortious interference must fail. Even taking Plaintiffs' allegations as true, as the Court must on a motion for judgment on the pleadings, *see Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), Plaintiffs can "prove no set of facts in support of [their] allegations which would entitle [them] to relief" against the Union Defendants, *Langdon v. Skelding*, 524 F. App'x 172, 174 (6th Cir. 2013) (quotation omitted).

10

Under Ohio law, a claim for tortious interference with a contract requires a plaintiff to prove:  (1) the existence of a contract; (2) the wrongdoer's knowledge thereof; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification; and (5) resulting damages.  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999).  It is axiomatic that, if there is no breach, there can be no tortious interference.  *Gibson v. City Yellow Cab Co.*, No. 20167, 2001 WL 123467, at *3 (Ohio Ct. App. Feb. 14, 2001); *see also Union of Needletrades, Indus. & Textile Employees AFL-CIO v. Am. Capital Strategies, Ltd.*, 546 F. Supp. 2d 546, 555 (S.D. Ohio 2008).  As set forth above, *see supra*, pp. 6-9, there is no breach of the CBA, or any other Agreement, in this case.  Accordingly, Plaintiffs' claim for tortious interference cannot succeed.  The Union Defendant's Motion is **GRANTED**.

## VII.   CONCLUSION

Defendants have demonstrated that no dispute of material fact exists with regard to Bunn's claims and Defendants' counterclaims.  Accordingly, Defendant's Motion for Summary Judgment (Doc. 33) is **GRANTED**.  With Bunn's claims resolved, Defendants have represented to the Court that the Individual Plaintiffs "will be entitled to any benefits that the Plan has to offer based upon the contributions paid on their behalf."  (*Id.* at 13).

Moreover, because the Court finds, as a matter of law, that the Funds did not breach the CBA, Plaintiffs cannot maintain their claim for tortious interference.  Thus, the Union Defendant's Motion for Judgment on the Pleadings (Doc. 44) is **GRANTED**.

Accordingly, this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

          /s/ Algenon L. Marbley
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED:  March 14, 2014**

11