## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **BUNN ENTERPRISES, INC.,** *et al.* | : | |
| | : | **Case No. 2:13-cv-00357** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Kemp** |
| **OHIO OPERATING ENGINEERS** | : | |
| **FRINGE BENEFIT PROGRAMS,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendants' Second Motion for Attorney Fees and Costs. (Doc. 68). Defendants seek fees incurred during this action, which resulted in the Court of Appeals affirming the Court's grant of Defendants' Motion for Summary Judgment (Doc. 66). For the reasons set forth herein, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

### A.  Factual Background

For purposes of this Motion, the Court need not describe the substance of this case at length. Plaintiff Bunn Enterprises, Inc. ("Bunn Enterprises" or "Plaintiffs") is a corporation organized under Ohio laws, an employer under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, *et seq*., and under the Employer Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002, *et seq*. Bunn Enterprises is a signatory to the Ohio Heavy Highway Agreement ("the CBA"), with the International Union of Operating Engineers Local 18 and its various branches ("Local 18"). By the terms of the CBA, Bunn Enterprises pays "fringe

1

benefit contributions" for hours worked by its employees to various Ohio Operating Engineers Fringe Benefit Programs ("Defendants" or the "Funds").

The Funds administer various Ohio Operating Engineers' benefits programs pursuant to the Ohio Operating Engineers Health and Welfare Plan, as amended August 1, 2011 (the "Plan"). Plaintiff Kevin W. Bunn ("K. W. Bunn") is the owner of Bunn Enterprises, as well as a participant in the Plan. Under the Plan, employees become eligible for various health and pension benefits once the Funds have received employer contributions for a certain number of hours worked.

Following an audit in late 2011, Defendants informed Bunn Enterprises that it owed the Funds more than $51,000 in unpaid contributions. Bunn Enterprises did not dispute approximately $4000 of that deficiency and paid that amount. It did, however, contest the Funds' findings with respect to the other monies allegedly owed, the bulk of which arise from Bunn Enterprises' nonpayment of contributions for certain hours worked by its employees. Bunn Enterprises asserted that the employees did not perform work covered by the CBA, so it was not required to make contributions for those hours. At the same time, Bunn Enterprises paid contributions to the Funds on behalf of Mr. Bunn based on all of his hours worked. The Funds posited that the CBA requires an employer to pay fringe benefit contributions for all hours worked by a particular employee, irrespective of the nature of the work performed.

*B.  Procedural History*

On April 16, 2013, Plaintiffs filed a verified complaint asserting claims against the Funds for a Declaratory Judgment and a Preliminary and Permanent Injunction. (Doc. 1). Simultaneously, Plaintiffs moved for a Temporary Restraining Order ("TRO") against the Funds. (Doc. 4). In the Complaint, Bunn Enterprises sought a declaration from this Court that it was not

obligated to pay delinquent fringe benefit contributions for "non-covered" hours which his employees worked.  Additionally, Mr. Bunn and certain of his employees separately filed their own claims against the Funds seeking to compel the Funds to provide them with benefits.  The Defendants filed counterclaims against Bunn Enterprises only, pursuant to 29 U.S.C. §§ 185(a), 1132(a)(3) and 1143, seeking the unpaid contributions, interest, and statutorily provided liquidated damages, attorney fees, and costs, pursuant to 29 U.S.C. §1132(g)(2).  (Doc. 14).  Following a conference pursuant to Local Rule 65.1, this Court granted in part and denied in part Plaintiffs' motion for a TRO.  (Doc. 8).  Two months later, on June 19, 2013, the Court granted a preliminary injunction as to Plaintiff Morgan, but denied the request for preliminary injunction in all of other respects.  (Doc. 24).  On May 30, 2013, Plaintiffs filed their Amended Complaint. (Doc. 18).  On June 12, 2013, Defendants answered the complaint as to all Plaintiffs, and filed their counterclaims against Bunn Enterprises only.  (Doc. 22).  Bunn Enterprises answered the counterclaims on July 3, 2013.  (Doc. 29).

On June 14, 2013, Defendants moved for Judgment on the Pleadings with regard to all individual plaintiffs, on the grounds that they failed to exhaust administrative remedies.  (Doc. 23).  On August 26, 2013, Defendants filed their own Motion for Summary Judgment.  (Doc. 33).  On September 9 and September 20, 2013, Defendants filed their answers to the Amended Complaint.  (Doc. 35; Doc. 39).  On December 20, 2013, the Defendants moved for judgment on the pleadings.  On March 14, 2014, this Court granted The Funds' Motion for Summary Judgment (Doc. 33) as well as the Defendants' Motion for Judgment on the Pleadings (Doc. 44). (Doc. 50).  On March 28, 2014, Defendants brought a motion for attorney fees pursuant to 29 U.S.C. § 1132(g)(D).  (Doc. 55).  This Court granted the motion in part and denied it in part (Doc. 79).

3

On April 14, 2015, Defendants brought this instant motion for attorney fees pursuant to 29 U.S.C. § 1132(g)(2)(D) requesting an additional fee award representing fees incurred preparing the Funds' first motion for fees (and its appeal) as well as the instant Motion. This matter has been fully briefed and is ripe for review.

## II.     STANDARD OF REVIEW

Under 29 U.S.C. § 1132(g)(2)(D), the award of reasonable attorney fees is mandatory where a fiduciary has sued successfully to enforce an employer's obligation to make contributions to a multi-employer plan pursuant to 29 U.S.C. § 1145. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936 (6th Cir. 1996); *Bricklayers Pension Trust Fund v. Rosati, Inc.*, 1999 WL 503501, at *3 (6th Cir. 1999) (unpublished) ("indeed, the allowance of attorney fees, as well as liquidated damages for unpaid contributions **is made mandatory** by 29 U.S.C. § 1132(g)(2)") (emphasis added). The Sixth Circuit has adopted a rule that, in ERISA cases, there is no requirement that the attorney fees awarded be proportional to the damage award, rather that the attorney fees amount must be reasonable as determined using the traditional "lodestar" approach. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar approach is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar amount is a reasonable fee. *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 565 (1986). Other considerations remain, however, that may lead the Court to adjust the fees up or down. *Hensley*, 461 U.S. at 434.

### III. ANALYSIS

*1. Reasonable Hourly Rates*

To determine the reasonable hourly rate to be applied in the lodestar calculation, courts initially assess the "prevailing market rate in the relevant community." *Trustees of Northwestern Ohio Plumbers and Pipefitters Pension Plan v. Helm & Associates, Inc.*, No. 3:10 CV 739, 2012 WL 3619827, at *2 (N.D. Ohio Aug. 21, 2012), *aff'd* Dec. 31, 2013 (citing *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The prevailing market rate can be surmised by "affidavits from attorneys or experts; citations to prior precedents showing reasonable rate adjudications for comparable attorneys or cases; references to fee award studies showing reasonable rates charged or awarded in the relevant community; testimony from experts or other attorneys in the relevant community; discovery rates charged by the opposition party; and reliance on the court's own expertise in recognizing applicable prevailing rates." *Id.* (citing *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, No. 3:05 CV 7153, 2006 WL 2404140, at *2 (N.D. Ohio Aug. 18, 2006)). Determining "a reasonable rate is made more difficult by the wide variations in lawyers' experience, skill and reputation, and an attorney's customary client billing rate is one reliable indicia of that attorney's prevailing market rate." *Schumacher v. AK Steel Corp. Ret. Account Pension Plan,* 995 F. Supp. 2d 835, 844 (S.D. Ohio 2014) (quoting *Hadix v. Johnson,* 65 F.3d 532, 536 (6th Cir. 1995)).

In this case, Defendants have provided references to several cases to support their hourly rate, as well as an Affidavit in Support of Motion for Attorney Fees which states that the rate entries are reasonable and necessary in this case. *See* Doc. 68 at 4; Doc. 68-1. Plaintiffs contest the rate for Attorneys Tarpy, Kinzer, and Clark, as well as the rate for Ms. Swinford, a paralegal.

<u>Attorneys Tarpy, Kinzer, and Clark</u>

Plaintiffs argue that this court should significantly reduce the hourly rates for Mr. Tarpy, Mr. Kinzer, and Mr. Clark because they are not reasonable. Mr. Tarpy's hourly rate is $525/535, Mr. Kinzer's hourly rate is $470, and Mr. Clark's hourly rate is $370/$390.  Plaintiffs argue that a more appropriate hourly rate for the attorneys, based on their experience should be $350 for Mr. Tarpy, $325 for Mr. Kinzer, and $300 for Mr. Clark.

Tarpy has been in practice for 47 years, Kinzer has been in practice for 27 years, and Clark has been in practice for 13 years.  This court held, in the first attorney fees case, that the hourly rates for these attorneys were reasonable and this Court stands by that holding.  *See Schumacher*, 995 F. Supp. 2d at 844-47; *Bailey v. AK Steel Corp.* No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008).

The hourly rates for the remaining attorneys on this case are neither contested by Plaintiffs, nor found to be unreasonable by this court.

<u>Jane L. Swinford</u>

Ms. Swinford is a paralegal that worked on the instant case, and billed at a rate of $195 per hour.  Plaintiffs contest that hourly rate based on case law in this jurisdiction awarding paralegals rates at a lower amount.  *See Trustees of Northwestern Ohio Plumbers*, 2012 WL 3619827, at *2; *Dalesandro v. Int'l Paper Co.*, 2005 U.S. Dist. LEXIS 44896 at *9 (S.D. Ohio July 8, 2005).  Plaintiffs assert a reasonable rate for Ms. Swinford would be in the range of $50 to $85 dollars an hour.

Given the accepted rates for paralegals in this jurisdiction, the Court reduces Paralegal Swinford's hourly rate to $125 per hour.  According to this Court's review of Plaintiffs' time

sheet, Swinford worked a total of 6.5 hours on this case.  Accordingly, **$455.00** will be reduced from the total attorney fees award.

### 2.  *Hours Reasonably Expended*

When determining the second part of the lodestar calculation, the court should exclude hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434.  This includes "'[e]xcessive, redundant, or otherwise unnecessary hours" because "hours that are not properly billed to one's client are also not properly billed to one's adversary." *Id.* (internal citations omitted).

Plaintiffs argue that the court should reduce most (if not all) of Mr. Tarpy's and Mr. Kinzer's hours because nearly every time entry is related to conferences or discussions with other attorneys in the firm and/or review of pleadings and motions. Plaintiffs also argue that approximately 58 hours of Mr. Clark's time was directly related to Defendants' appellate brief and oral argument.  A brief Plaintiffs claim was practically the same brief submitted to the Court on summary judgment.

As this Court held in the attorney fees case prior to this one, attorneys have the duty to represent their clients, and preparing these pleadings, reviewing cases, and meeting with other attorneys is a normal part of any litigation.  As such, these time entries shall remain.

Upon further review of the time entries provided by Defendants' attorneys, the Court finds the following time entries relating to conferences to be redundant, as every person involved in each discussion counts his or her time separately: 3/17/14: Mr. Clark's conference with Ms. Swinford (.5 hour); 4/14/14 & 4/15/14: Mr. Clark's conference with Ms. Bowers regarding garnishment proceedings (amount of time allotted specifically to discussion unknown); 4/21/14: Mr. Clark's meeting with Ms. Bowers (amount of time allotted specifically to discussion

unknown); 4/24/14: Mr. Clark's conference with Mr. Tarpy (.5 hours). The Court finds that the attorney fees award should be reduced according to these duplicative entries.  *See Schumacher*, 995 F. Supp. 2d at 842-43 (reducing an attorney's hours by 35% to account for duplicative conferencing); *Niswonger v. PNC Bank Corp. and Affiliates Long Term Disability Plan,* No. 3:10-cv-377, 2011 WL 4543929 (S.D. Ohio Sept. 29, 2011) (reducing a fee award by hours duplicated by a paralegal and attorney).

In addition to excessive duplication of conferences, many individual entries do not parse out what portions of the attorneys' documented time were expended on each task listed in the "narrative."  Instead, each attorney lists all tasks performed on the case that day, and then a lump sum of time expended on the case that day.  For instance, on April 21, 2014, Attorney Clark states that he spent 4.5 hours preparing a motion, conferencing with Ms. Bowers and plaintiffs' counsel, and reviewing recent audit findings.  That same day, Ms. Bowers states that she spent .5 hour in a conference with Mr. Clark, and in another conference with Mr. Tulencik.  Thus, while the Court assumes that Attorney's Clark and Bowers are claiming duplicative billing of the same conference held on April 21, 2014, the billing statement leaves unclear the duration of the conference.

Attorneys who seek fees "must also maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended" on the case and the court must be able to conclude that the party seeking the award has sufficiently documented its claim.  *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), abrogated on other grounds by *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001); *Imwalle v. Reliance Med. Prods.*, 515 F.3d  531, 552 (6th Cir. 2008).

This Court reduces Defendants' total request by 5% for insufficient documentation, as well as for duplicative documentation, as it did in the previous attorney fees case.

### 3.  Downward Adjustment

Plaintiffs argue that Defendants' attorney fee award should be reduced due to the number of people working on the case and the un-complex nature of the litigation.  (Doc. 73 at 7).

There is a strong presumption that the lodestar amount is a reasonable fee.  *Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. at 565 (1986).  In considering whether to increase or decrease the loadstar amount, the Court should consider several factors.  *Trustees of Northwestern Ohio Plumbers*, 2012 WL 3619827, at *1.  These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill needed to perform legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards for similar cases.  *Id.*  Nothing in the briefings persuades the Court of any exceptional circumstances that would warrant an upward or downward adjustment.  *See Delaware Valley Citizens' Council for Clean Air*, 478 U.S. at 565 (1986) ('modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts") (quoting *Blum v. Stenson*, 465 U.S. 886, 899 (1984)).  Defendants' attorney fees are appropriate as reduced by this Court.

In sum, this Court reduces $455.00 from a total of 45,187.50, which equals $44,732.50.  Then this Court reduces that amount by 5%, which equals **$42,495.88**.

*4.   Fees on Fees*

Plaintiffs contend that the recovery of fees for time spent preparing a request for fees is acceptable, but that the hours spent briefing and litigating the fees issue should be capped at 3% of the total hours spent on the main case.  The Defendants have expended approximately 23.5 hours and $8,741.25 in fees briefing and litigating for the recovery of fees.  Plaintiffs ask for the hours to be reduced to 9.6 hours.

*Coulter v. State of Tenn.*, the Sixth Circuit Title VII case on which Plaintiffs rely, states that guidelines and limitations should be placed on attorney fees because the prospect of large attorney fees could discourage early settlement of cases and reward protracted litigation of civil rights cases.  *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986).  The Court stated that "[t]he legislative intent behind attorney fee statutes . . . was to encourage lawyers to bring successful civil rights cases, not successful attorney fee cases."  *Id.*  The Sixth Circuit held that except for "unusual circumstances" the hours spent preparing and litigating an attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on paper without a trial.  *Id.*

Some Ohio district courts have held that ERISA claims present an "unusual circumstance" that would make the *Coulter* limitation on attorney fees inapplicable.  *Klein v. Cent States, Southeast and Southwest Areas Health and Welfare Plan*, 621 F. Supp. 2d 537, 545 (N.D. Ohio 2009); *Rist v. Hartford life and Accident Insurance Co.*, No. 1:05-cv-492, 2011 Westlaw 6101633, at *9 (S.D. Ohio Nov. 14, 2011) (finding that "a fee award in an ERISA action should not be reduced based on the 3% guideline").  Although these claims arose in the context of a claim for benefits, this Court agrees with the premise that ERISA cases are different from Title VII Civil Rights Cases.  While the attorney fees statute in a Title VII action is

10

designed to encourage attorneys to file Civil Rights Cases, ERISA attorney fees provisions protect the assets of the funds. *Central States, SE & SW Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460-61 (6th Cir. 1989) (stating that"[c]osts of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials—conversations to which plans are not privy—may be especially costly, and hold out especially great prospects of coming away empty-handed...."). This Court finds the time spent on preparing and litigating attorney fee issue to be reasonable.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion is **GRANTED in part** and **DENIED in part**. This Court hereby grants Defendants attorney fees in the amount of **$42,495.87**.

**IT IS SO ORDERED.**


    ___/s/ Algenon L. Marbley_____
    **ALGENON L. MARBLEY**
    **UNITED STATES DISTRICT JUDGE**


**DATED: January 19, 2016**


11